William A. SLIGH and wife,
Kathryn Sligh,

v.

TENNESSEE VALLEY AUTHORITY; United States by way of Commanding Officer, United States Corps of Engineers, Department of the Army; and United States by way of United States Coast Guard, Department of Transportation.

No. CIV-1-80-46.

United States District Court, E. D. Tennessee, S. D.

Sept. 23, 1980.

Barbara Sims, Chattanooga, Tenn., for plaintiffs.

Herbert S. Sanger, Jr., Gen Counsel, James E. Fox, Assoc. Gen. Counsel, Thomas C. Doolan, Michael R. McElroy, Tennessee Valley Authority, Knoxville, Tenn., R. Clayton Seaman, Dept. of Justice, Torts Branch, Civil Div., Washington, D. C., John C. Cook, Asst. U. S. Atty., Chattanooga, Tenn., for defendants.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This is an action seeking damages for personal injury and property damage arising from the destruction of a small private fishing boat when it struck a concrete mooring cell below Nickajack Dam ("the Dam") in the Tennessee River. Jurisdiction of the Court is invoked under 28 U.S.C. §§ 1346(b) and 1337, and is not in dispute. The complaint asserts that defendant Tennessee Valley Authority ("TVA") was "knowingly negligent" in allowing the water level of the River around the mooring cell to rise to a dangerous level, that defendant United States Corps of Engineers was negligent in the planning and construction of the mooring cell, and that the United States Coast Guard negligently failed to mark the mooring cell with warning devices. The matter is presently before the Court upon defendant TVA's motion to dismiss or, in the alternative, motion for summary judgment. Since the motion is supported by an affidavit and opposed by the plaintiffs' affidavits, it will be treated as a motion for summary judgment. Rule 12, *Federal Rules of Civil Procedure.*

When construed favorably to the plaintiffs, the substance of the complaint is that at approximately 6:45 p. m. upon March 4, 1979 the plaintiffs, husband and wife, were operating an 18-foot fishing boat a short distance downstream from the Nickajack Dam upon the Tennessee River when, by reason of the high water level in the River, they were caused to crash into a concrete mooring cell, destroying their boat and injuring each of the plaintiffs. The plaintiffs contend that the mooring cell was inadequately marked with warning devices, was negligently placed and constructed so as to be subject to inundation and that the TVA was negligent in permitting or causing the river water level to rise to a point where the mooring cell was nearly inundated and obscured.

The following facts appear undisputed in the record from the pleadings, the affidavit and exhibits in support of the motion and the counteraffidavits of the plaintiffs. The TVA operates some 60 dams and reservoirs upon the Tennessee River and its tributaries pursuant to authority granted by the United States Congress [16 U.S.C. § 831h–1 (1976)]. Included within these dams is the Nickajack Dam located on the Tennessee River some 20 miles downstream from Chattanooga, Tennessee. The mooring cell struck by the plaintiffs was built by the TVA and is located a short distance downstream from the navigation locks in the dam and near the north shore of the River.

The mooring cell is a cylindrical concrete structure 30'3" in diameter and is used by barges and other craft to tie up temporarily while waiting to go through the locks at the Nickajack Dam. A dispute exists between the parties with regard to the relative elevation of the water and the top of the mooring cell at the time of the accident. The TVA contends that the water level at the date and time of the accident was such that the mooring cell and its steel superstructure extended more than 12' above the surface of the water, the top of the concrete cell being 5½' above the water level and the steel superstructure extending an additional 7½' above the water. The plaintiffs upon the other hand make no reference to the steel superstructure but contend that the concrete portion of the cell was at water level. Details with regard to TVA's reservoir management policy and flood control activities at the time of the accident are set forth in its affidavit filed in support of its motion. Suffice it to say that the accident occurred during a flooding period following heavy rains and that the water level at the site of the accident was being maintained at a level consistent with the TVA flood control policy, its policy and performance in this regard having been successful in avoiding flooding conditions upstream at Chattanooga, Tennessee.

Upon the foregoing state of the record the TVA contends that it is entitled to a summary judgment upon two grounds. In the first place, the TVA contends that the flood control activities here complained of cannot be the basis of any civil liability, as such activity constituted discretionary action taken by a governmental agency pursuant to statutory authority. In the second place, the TVA contends that, as an agency of the United States conducting flood control activity, it is specifically exempt from liability for such activity pursuant to the provisions of Section 702c of Title 33 U.S.C.

The plaintiffs dispute each of these contentions. The first contention is disputed upon the ground that in causing an excessive amount of water to be discharged through Nickajack Dam on the date of the accident the TVA was performing a ministerial function for which it could be held liable and not a discretionary activity for which a governmental agent would be exempt from liability. The second contention is disputed upon the ground that Section 702c of Title 33 U.S.C. is inapplicable under the facts of this case in that the matters complained of as causing the boating accident were not exclusively matters of flood control.

It is a matter of settled legal policy that discretionary activity taken by a governmental agency pursuant to express statutory authority cannot be the basis of an action for civil tort damage. *See Grant v. Tennessee Valley Authority*, 49 F.Supp. 564, 566 (E.D.Tenn.1942); *Atchley v. Tennessee Valley Authority*, 69 F.Supp. 952 (N.D.Ala. 1947); *Morris v. Tennessee Valley Authority*, 345 F.Supp. 321 (N.D.Ala.1972); *Lynn v. United States*, 110 F.2d 586 (5th Cir. 1940); *Olson v. United States*, 93 F.Supp. 150 (D.N. D.1950); and *Spillway Marina v. United States*, 445 F.2d 876, 877 (10th Cir. 1971).

In this regard Section 9a of the TVA Act [16 U.S.C. § 831h–1 (1976)] expressly authorizes the TVA "to regulate the stream flow for the purposes of promoting navigation and controlling floods" in the management of its reservoirs.

While not disputing the proposition that discretionary action by a governmental agency pursuant to statute cannot afford a basis for a civil damage action, the plaintiffs do dispute TVA's contention that the discharge of the water here involved was a discretionary act. Rather, the plaintiffs contend that the TVA, in discharging the quantity of water from Nickajack Dam that it did on the date of the accident, was acting in a ministerial or functionary capacity and not in a discretionary or policy making capacity. In this regard the plaintiffs rely upon the distinction between discretionary matters, for which no action will lie, and ministerial activity, for which an action may lie, as that distinction was enunciated in the case of *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). The plaintiffs also rely upon

the interpretation of the rule in *Dalehite* as made in the Sixth Circuit case of *Downs v. United States*, 522 F.2d 990 (6th Cir. 1975).

■ However these matters may be, that is whether the particular action of TVA in discharging water from the Nickajack Dam on the date in question was discretionary or ministerial within the rule laid down in the *Dalehite* case, it is clear and undisputed in the record in this case that the volume of water being discharged was within the perimeters of the reservoir management and flood control established by the TVA. If no action would lie for the establishment of that admittedly discretionary policy, then likewise no action would lie for the implementation of that policy in accordance with its terms.

The initial ground asserted by the TVA in support of its motion for summary judgment will accordingly be sustained.

In the interest of a full consideration of the issues raised in the motion for summary judgment, the Court will also consider the second ground for summary judgment in contention between the parties, and that is the contention of the TVA that Section 702c of Title 33 U.S.C. specifically exempts the TVA from liability for matters of the nature complained of by the plaintiffs in this lawsuit. Section 702c states in pertinent part:

"No liability of any kind shall attach or rest upon the United States for any damage from or by floods or flood waters at any place . . . ."

■ One of the principal reasons for the creation of the TVA was the need for control of the destructive flood waters in the Tennessee River. *See* 16 U.S.C. § 831. It is undisputed that from March 3, to March 5, 1979, a severe storm occurred in southeastern Tennessee, with locations in the immediate vicinity of the Dam receiving from 2.8 to 4.4 inches of rain. In order to avert the flooding of the City of Chattanooga water was discharged from the Dam in accordance with routine flood control procedures. This discharge of water kept the level of the reservoir and River above the Dam below flood state, but may have inundated the less populated land below the Dam to a depth of approximately seven feet. The plaintiffs have asserted that the high water level below the Dam led to the incident in question and thus should render the TVA liable for the damages suffered. But it is the existence of the flood conditions which by statute exempts the TVA from liability. The effect of 33 U.S.C. § 702c is to hold the United States and its agencies and personnel operating its flood control projects immune from lawsuits arising from the effects of floods and flood waters. As noted by the Eighth Circuit and restated by the Tenth Circuit:

"[W]hen Congress entered upon flood control on the great scale contemplated by the Acts it safeguarded the United States from liability of any kind from damage from or by floods or flood waters in the broadest and most emphatic language. The cost of the flood control works itself would inevitably be very great and Congress plainly manifested its will that those costs should not have the flood damages that will inevitably recur added to them. . . . [T]here is no question of the power and right of Congress to keep the government entirely free from liability when floods occur, notwithstanding the great government works undertaken to minimize them." *National Mfg. Co. v. United States*, 210 F.2d 263, 270 (8th Cir. 1954), as cited in *Callaway v. United States*, 568 F.2d 684, 686 (10th Cir. 1978).

In the case of *Ponderendolph v. Derry Township*, 330 F.Supp. 1346 (W.D.Pa.1971), for example, the plaintiffs' auto was swept from a bridge by rushing water. The flow of water from the federally operated dam in that instance had been restricted to avoid downstream flooding due to heavy rains. A motion to dismiss based upon Section 702c was granted, thus providing immunity for the federal employees and the sovereign. Section 702c immunity exists "even when the government's own negligence has caused or aggravated the losses." *Florida East Coast Railway Co. v. United States*, 519 F.2d 1184, 1191 (5th Cir. 1975), *see also,*

*Lenoir v. Porters Creek Watershed District,* 586 F.2d 1081, 1086 (6th Cir. 1978). Upon the foregoing summary of the facts and relevant cases, it is apparent that the defendant TVA cannot be shown to have committed acts which would render it liable for negligence to the plaintiffs herein. The motion for summary judgment filed upon behalf of defendant TVA will accordingly be sustained and the action dismissed as to it.

The TVA having acknowledged sole responsibility for the construction of the subject mooring cell and for the discharge of water from the Nickajack Dam, the plaintiffs will be allowed ten (10) days to show cause why the complaint in this case should not be dismissed for failure to state a claim against the defendants, the United States Corps of Engineers and the United States Coast Guard.

An order will enter in accordance with this memorandum.