John A. QUEEN and Queen Electric Manufacturing Company, Plaintiffs-Appellants,

v.

TENNESSEE VALLEY AUTHORITY, Mike Butler and Craven Crowell, Defendants-Appellees.

No. 81–5018.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 9, 1982.

Decided Sept. 24, 1982.

Richard W. Wiseman, Brown, Herman, Scott, Dean & Miles, J. Shelby Sharpe, Fort Worth, Tex., William H. Skelton, Baker, Worthington, Crossley, Stansberry & Woolf, Knoxville, Tenn., for plaintiffs-appellants.

Herbert S. Sanger, Jr., Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, Robert C. Glinski, Edwin W. Small, Tennessee Valley Authority Div. of Law, Knoxville, Tenn., for defendants-appellees.

Before LIVELY and MERRITT, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This is an action for common law defamation against the Tennessee Valley Authority (TVA) and certain of its employees. The complaint was filed by appellants Queen Electric Company and its principal stockholder, John A. Queen (hereinafter referred to collectively as "Queen"). The litigation involves statements made by TVA employees about a device manufactured by Queen Electric which is alleged to save electricity. The plaintiffs sought damages and injunctive relief.

District Judge Robert L. Taylor granted summary judgment in favor of defendants, holding that the TVA and its co-defendant employees are immune from suit in this type of action, and declined to issue an injunction. *Queen v. Tennessee Valley Authority,* 508 F.Supp. 532 (E.D. Tenn. 1980). Queen appeals. We affirm.

I

Plaintiff-appellant John Queen owns 88 per cent of the stock of Queen Electric Manufacturing Co. Queen invented and manufactures a device known as "Phase Liner" and has a patent application pending for this product. The purpose of the device is to reduce electric bills of consumers of electric power. The Phase Liner is advertised and promoted as being capable of reducing electric bills of commercial or residential users by as much as 30 per cent.

In September 1978, Mr. Queen appeared on a television news program in Nashville and demonstrated his product. A week later, the stations broadcasting the program invited a TVA representative to appear on the same show and discuss the device. Walter Szelich, a TVA engineer, appeared on the television program and expressed the opinion that the Phase Liner would not result in significant reductions in the electric bills of most of the TVA's residential and small commercial consumers. Since that appearance, the TVA has received many requests for information about the Phase Liner as a conservation device. The TVA, adhering to the reasoning and conclusions of its engineers, has continued to maintain that the device would not serve to reduce the power bills of residential and small commercial consumers. A press release to that effect also was issued.

The dispute accelerated between TVA and Queen Electric and Queen's distributors in the Tennessee Valley Area. The differences of opinion between the parties became the subject of press releases, newspaper articles and various showdowns involving publicly staged experiments that were either unsuccessful or inconclusive.

A prior lawsuit alleging defamation was filed in a Tennessee State court by Phase-Liner Energy Savings Corporation, a distributor of the Phase Liner and a franchising agent for Queen. This action was transferred to the United States District Court for the Middle District of Tennessee, where it was dismissed with prejudice as to the claim for monetary damages and without prejudice as to the claim for injunctive relief. *Phase-Liner Energy Savings Corp. v. TVA,* No. 79–3346–NA–CV (M.D. Tenn. dismissed Jan. 23, 1980). Appellant Queen was not a party to that action, but appeared during the discovery proceedings as a deponent, as an expert witness, and as the manufacturer of the Phase Liner. A subsequent newspaper article, based on an interview with Craven Crowell, head of TVA's Information Office, contained the admittedly erroneous statement that Queen himself had filed and lost the $5,000,000 lawsuit in the district court for the Middle District of Tennessee.

The substance of the parties' factual dispute is not relevant to the disposition of this case and will not be delineated in great detail. Essentially, the position of the TVA is that the operative element of the Phase Liner, a "power factor correction capacitor," admittedly will reduce the electric bills of large industrial consumers, because these consumers are billed in part of their kilovoltampere demand ("kVA demand"). The Phase Liner's capacitor will reduce the kVA demand measurement and reduce the electric bill to the extent it is based thereon. Smaller commercial users and residential consumers, however, are not billed on the basis of kVA demand and TVA engineers express the view that the Phase Liner's reduction of this measurement will have no effect on their electric bills. The Phase Liner also reduces "line loss," which is basically the amount of power lost due to the resistance of the electrical line over which it travels. The TVA contends that the line loss for its smaller customers will be negligible, because it will be measured only over the relatively short distance between the customer's electric meter and electrical load. The TVA's position on the Phase Liner is stated in its press release:

TVA is concerned that if residential and small commercial consumers spend their available conservation funds on measures which do not reduce their electric bills, they will be unlikely to spend additional funds on proven and effective devices. Accordingly, TVA's conservation program includes advising the public about alleged conservation devices such as the Phase-Liner.

Appellant Queen disputes these conclusions of TVA and refers to experiments and demonstrations tending to establish the efficacy of the device, and to the fact that only a very small proportion of the purchasers of the Phase Liner take advantage of the manufacturer's guarantee to return the full purchase price if the device does not reduce electric bills by at least 10 per cent.

Appellants filed this lawsuit on August 12, 1980. They contended that the TVA's

statements about the Phase Liner and about Mr. Queen's having filed and lost the prior lawsuit were defamatory. They alleged substantial damage to Mr. Queen and to the business of Queen Electric, and sought $2,000,000 in damages and injunctive relief. Extensive discovery was undertaken by the parties. The defendants moved for summary judgment on November 25, 1980. District Judge Robert Taylor granted the motion of defendants on December 11, 1980. Judge Taylor found that the individual employees named as defendants were immune from suit under the doctrine of official immunity; that the TVA itself was immune on the basis of *respondeat superior;* and that an injunction would be contrary to the principles of the First Amendment. We affirm on the basis of the grounds set forth in this opinion. *Respondeat superior* is not the basis of our opinion.

## II

The doctrine of official immunity has been created and developed by the federal courts. *See Howard v. Lyons,* 360 U.S. 593, 597, 79 S.Ct. 1331, 1333, 3 L.Ed.2d 1454 (1959). The rule was announced by the Supreme Court in *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), wherein the Court held that federal executive officials enjoy absolute immunity from suit for common law torts based on acts within their discretionary authority. In *Granger v. Marek,* 583 F.2d 781, 784–85 (6th Cir. 1978), this court followed the *Barr* rule and held that the rule as applied to common law torts survived the decision of the Supreme Court in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), in which the Court held that federal officials were afforded only a qualified, good-faith immunity from suits for constitutional torts.

Judge Taylor held that the individual TVA employees named in the complaint were immune from suit under the *Barr* rule. 508 F.Supp. at 534. In making this determination, he relied on the decision of this court in *Granger v. Marek, supra,* 583 F.2d at 784–85, and his own prior decision in *Walters v. Tennessee Valley Authority,* 503 F.Supp. 111, 114–15 (E.D. Tenn. 1980), *aff'd in unpublished Order,* (6th Cir., Jan. 28, 1982) (No. 80–5430), *cert. denied,* —— U.S. ——, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982).

The appellants do not argue that the individual employees were acting beyond the scope of their authority or that they were performing "ministerial" as opposed to "discretionary" functions. *See, e.g., Estate of Burks v. Ross,* 438 F.2d 230, 235 (6th Cir. 1971). Appellants argue instead that the TVA officials were performing proprietary rather than sovereign functions, because their actions arose out of TVA's role as a utility. While this factor may be relevant to the liability of the TVA itself for damages, the cases applying the *Barr* doctrine have not admitted of any such distinction in the immunity of an officer. *Compare, e.g., Estate of Burks, supra,* 438 F.2d at 232 (doctor who was also director and administrator of Veterans Administration hospital entitled to immunity); *Molever v. Lindsey,* 411 F.2d 597 (6th Cir. 1969) (auditor for Federal Deposit Insurance Corporation entitled to immunity from suits for defamation arising out of statements made at the bank's meeting of the Board of Directors based on his audit); *see also Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 566 F.2d 289, 291–92 (D.C. Cir. 1977) (en banc) *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978) (Chairman of the Department of Anthropology at the Smithsonian Institution's Museum of Natural History immune from defamation suit for statements criticizing plaintiff's capabilities in the field of archaeological excavation, if statements made were within scope of his authority). There are stronger reasons for subjecting TVA officials to liability than any of the officials in the cases cited above, because TVA is more extensively involved in the commercial arena than most other Government agencies. *See* Wirtz, *The Legal Framework of the Tennessee Valley Authority,* 43 Tenn. L.Rev. 573 (1976). We nonetheless conclude that under the facts of the present case, the statements made by these officials

are entitled to the protection of the *Barr* rule.

The TVA submitted affidavits describing the authority and responsibilities of its employees Craven Crowell and Michael Butler, who were sued individually by Queen. Crowell is head of TVA's Information Office and Butler was Manager of Media Relations (subordinate to Crowell) in the same Office. Crowell allegedly made the statement about Queen's role in the prior lawsuit to the news reporter, and Butler's name appeared on the press release describing TVA's position concerning appellant's device. According to the official job descriptions and the TVA organizational bulletin attached to the affidavits, the Office of Information has the responsibility to investigate and respond to matters of expressed public concern and to provide information for public and official use on the "policies, decisions and accomplishments" of the TVA. The TVA asserts that these and other responsibilities of the Information Office are in furtherance of the statutory authority of TVA "to make studies, experiments, and determinations to promote the wider and better use of electric power for agricultural and domestic use, or for small or local industries . . . . 16 U.S.C. § 831i.

■ We conclude that the district court was correct in finding that these TVA officials were entitled to immunity from suit in their personal capacities for statements made in the course of the performance of these duties. We recognize that the doctrine of absolute immunity has been criticized by commentators as causing, on occasion, the unnecessary foreclosure of meritorious claims. *See generally* Prosser, Law of Torts, § 144, pp. 782–84, § 132, pp. 987–92 (4th Ed. 1971); Bermann, *Integrating Governmental and Officer Tort Liability,* 77 Colum. L.Rev. 1175 (1977); *Jaffe, Suits Against Governments and Officers; Dam-*

*age Actions,* 77 Harv. L.Rev. 209 (1963); Comment, *Federal Executive Immunity from Civil Liability in Damages: A Reevaluation of Barr v. Matteo,* 77 Colum. L.Rev. 625 (1977); *Recent Developments: Government Immunity,* 47 Tenn. L.Rev. 859 (1980) (criticizing the Sixth Circuit's decision in *Granger v. Marek, supra,* 583 F.2d 781). It also is true that what should be one of the most important considerations from a practical standpoint—whether the government agency has agreed to indemnify the official—has not played a significant role in the courts' analysis of this problem. *See* K. C. Davis, Administrative Law Treatise, Ch. 26 (1982 Supp.).

The rule in this Circuit has been settled by *Granger v. Marek, supra,* 583 F.2d 781, in which we determined that we are bound by the decision of the Supreme Court in *Barr v. Matteo. See* 583 F.2d at 784. The policies which favor the *Barr* rule are most appropriate in defamation actions of this type, where the defendants have a statutory directive to speak out on a matter of public concern, and where the public relies on these defendants as a source of information, and where the appellants seek to enjoin or impose liability on them for their good faith evaluation and criticism of their product.[1]

In *Walters, supra,* 503 F.Supp. at 115–16, Judge Taylor extended the application of the *Barr* rule to TVA officials and we affirmed in an unpublished decision. We reaffirm here that the *Barr* rule still applies in this Circuit and that the individual defendants in this case are entitled to its protection. We note, however, that a petition for certiorari is currently pending before the Supreme Court on this issue in the *Walters* case. *See* 51 U.S.L.W. at 3025, 3062. Any change in the law should await a decision by Congress or the Supreme Court.

---

1. Appellants contend that Judge Taylor abused his discretion in denying appellants' motion to amend the complaint as untimely and meritless. We conclude that Judge Taylor did not abuse his discretion, and we note in addition that the amended complaint merely sought to add individual defendants, including TVA

Chairman David Freeman, whose functions and responsibilities were similar to or more likely to receive the protection of this rule than those of the individual defendants discussed in this opinion, who were named in the first complaint.

III

Few courts have considered the relationship between officer immunity and the liability of the agency which employs the officer.

It is clear that under TVA's "sue and be sued" clause, 16 U.S.C. § 831c(b), the TVA enjoys no sovereign immunity, and that Congress has provided expressly that the TVA may be sued. The TVA's enabling act provides that it "[m]ay sue and be sued in its corporate name." 16 U.S.C. § 831c(b). The legislative history of the TVA Act, 16 U.S.C. § 831 *et seq.*, indicates that this language was intended to be a broad waiver of sovereign immunity:

> The Senate amendment limited the suability of the corporation solely to suits for the enforcement of contracts and the defense of property. The House bill placed no limitations whatever upon the suability of the corporation, so that all persons who had a cause of action against the corporation might have their day in court. The House provision was written into the conference amendment in the interest of justice.

H.R. Rep. No. 48, 73d Cong., 1st Sess. 16 (1933).

The Supreme Court has also indicated that "sue and be sued" clauses should be construed broadly:

> Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory on constitutional scheme,[3] that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense.

*F.H.A. v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940) (footnotes omitted).

This clause has been read to impose amenability to suit upon the TVA notwithstanding the Authority's protestations of immunity. *See, e.g., Smith v. Tennessee Valley Authority,* 436 F.Supp. 151, 152–54 (E.D. Tenn. 1977) (strict liability for blasting and continuing trespass for shock concussion waves); *Brewer v. Sheco Construction Co.,* 327 F.Supp. 1017, 1019 (W.D. Ky. 1971) (strict liability for blasting and detonating activities); *Adams v. Tennessee Valley Authority,* 254 F.Supp. 78, 80–81 (E.D. Tenn. 1966) (Taylor, J.) (wrongful acts of employees in blasting during construction of steam plant); *In Re Clerk's Fees and Cost Bonds,* 49 F.Supp. 1011 (M.D. Tenn. 1943) (TVA not exempt from paying filing fees in court).

Despite this broad consent to suit embodied in the TVA's enabling act, a number of courts have found that as a matter of "public policy" (and not immunity), the TVA cannot be subject to liability for damages when engaged in certain governmental functions. *See, e.g., Painter v. Tennessee Valley Authority,* 476 F.2d 943 (5th Cir. 1973) (TVA not liable for punitive damages where United States would not be); *United States v. Pressnell,* 328 F.2d 580 (6th Cir. 1964) (TVA not liable for costs in eminent domain proceeding, because United States, real party in interest, would not be liable); *Lynn v. United States,* 110 F.2d 586, 590 (5th Cir. 1940) (TVA not liable for flood damage because "[t]he improvement of the river is not a tort which is unlawful, but an act which the United States had the right to do and commanded this agent to do"); *Sligh v. Tennessee Valley Authority,* 532 F.Supp. 168, 170–71 (E.D. Tenn. 1980) (TVA not liable for damage from flood control project); *Morris v. Tennessee Valley Authority,* 345 F.Supp. 321 (N.D. Ala. 1972) ("TVA's fluctuation of reservoir water levels in carrying out its water control functions as directed by statute represents an exercise of discretionary governmental authority which is not subject to judicial re-

view"); *Pacific National Fire Insurance Co. v. Tennessee Valley Authority,* 89 F.Supp. 978, 979 (W.D. Va. 1950) (TVA not liable for blasting damage in connection with building a dam because construction of dam was a "discretionary governmental duty entrusted to TVA by statute") *Atchley v. Tennessee Valley Authority,* 69 F.Supp. 952, 954 (N.D. Ala. 1947) ("the Federal Government, its agencies and instrumentalities, are not liable for consequential damages arising out of the construction or operation of a navigation improvement. The doctrine of non-liability for consequential damages not amounting to a taking is not based upon the immunity to suit of the United States, but is a doctrine of substantive law which protects the agent as well as the principal"); *Grant v. Tennessee Valley Authority,* 49 F.Supp. 564 (E.D. Tenn. 1942) (TVA not liable in negligence for flood damage to plaintiff's crops because flood control is a governmental function).

■ These decisions demonstrate that in certain limited situations the TVA is exempt from liability arising out of the exercise of certain wholly governmental functions, where the TVA acts solely as the Government's agent and where the United States itself would not be liable. The nonliability is not an incident of immunity but the result of the entitlement of the TVA, when it acts solely as a governmental entity, to assert as well established substantive principle of nonliability which the Government itself would be entitled to assert and which the Government has not otherwise waived.

■ We conclude that the above rule applies to the statements complained of in this case. The actions taken in the present case were pursuant to a statutory mandate directing the TVA "to make studies, experiments and determinations to promote the wider and better use of electric power for agricultural and domestic use, or for small or local industries." 16 U.S.C. § 831i. The public relies on the TVA as a Governmental source of information on energy conservation, and the TVA has undertaken to advise consumers about this matter of important public concern. What is expressly directed and authorized by a valid constitutional Act of Congress cannot be the subject of an action for damages. We find that the district judge correctly granted the motion of the defendants for summary judgment.

■ For the foregoing reasons, we also conclude that Judge Taylor did not abuse his discretion in refusing to issue the injunction against the defendants. We note that although appellants allege in their complaint malice, bad faith and an intent to harm their business, it is difficult to determine from appellant Queen's deposition testimony where he disagrees with TVA's assessment of his product. Appellant indicated his agreement with almost every material conclusion made by TVA's engineer about appellants' device; these included the statements in the engineer's report that the Phase Liner reduces kVA demand and line loss, that most if not all of TVA's residential and small commercial consumers are not billed on the basis of kVA demand and that line loss in such cases usually will be negligible. Appellant Queen stated in this deposition that the Phase Liner could save a residential consumer "very little." Appellant Queen's most substantial disagreements with the TVA involve hypothetical situations in which the Phase Liner is installed at the electrical load (rather than at the meter) and where the line over which the current flows is long enough to cause a substantial loss that would be ameliorated by the Phase Liner, or where the customers are metered on the basis of each individual electric load rather than on the basis of all the electric loads at the residence simultaneously. Appellants appear to object more to the dissemination rather than the content of the statements made by TVA about their product. Even absent TVA's statutory directive and the immunity of its officials, we conclude that the district court did not abuse its discretion in declining to issue an injunction in a dispute that is best resolved by the expression, and not the suppression of information and ideas.

The judgment of the district court is affirmed. The costs of this appeal are taxed against appellants.

MERRITT, Circuit Judge, dissenting.

I respectfully disagree for the reasons stated in my dissenting opinion in *Granger v. Merek,* 583 F.2d 781, 786–87 (6th Cir. 1978). I do not believe that federal employees and agents are protected from all liability for either common law or statutory torts by the doctrine of absolute immunity. The recent case, *Nixon v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), appears to overrule implicitly the doctrine of *Granger* holding that the qualified immunity announced in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), applies only to constitutional torts. In the *Fitzgerald* case the Supreme Court held that the President's White House aides have only a good faith qualified immunity from liability for the violation of a federal statute. The old doctrine of absolute immunity should be declared dead except in the case of a few officials for whom there are impelling constitutional or policy reasons for such an immunity—members of Congress, judges and prosecutors and the President. This case therefore should be reversed and remanded to the District Court for application of a qualified good faith immunity to the conduct of the defendant federal officials.

Neither do I agree that TVA itself should be given an absolute immunity from liability for torts committed in its governmental capacity. Although TVA is not technically covered by the Federal Tort Claims Act, *see* 28 U.S.C. § 2680(1), I would apply the Act by analogy. The Act represents the current legislative compromise on the subject of governmental liability, and I can see no reason in principle or policy why the accommodation reached in the Tort Claims Act should not apply to TVA. There is no indication that Congress intended an absolute immunity for TVA. It is unclear what rules of liability Congress intended should apply to TVA. Here therefore we must create principles of liability and immunity under the federal common law. The Tort Claims Act provides the best place to turn for an analogue.[1]

Although the facts in the case before us suggest that the plaintiff would probably lose on the merits, the court disposes of the case in a way that forecloses the good case as well as the losing case. As a consequence of the rise of the administrative state during the past 50 years, business and citizens are often dependent in the first instance on federal administrative officials for the security of their property and their liberty. The federal courts provide the only effective avenue of redress for wrongs committed by these officials. Our doors should not be closed in cases of this type by doctrines of absolute immunity.

---

1. In the instant case it would appear that the libel and slander exception to tort liability in the Act, *see* 28 U.S.C. § 2680(h) would bar plaintiff's claims.