**William P. MORINVILLE, et al.**

v.

**OLD COLONY COOPERATIVE BANK, et al.**

**Civ. A. No. 80–0290 D.**

United States District Court, D. Rhode Island.

Feb. 10, 1984.

Marty C. Marran, Joseph Marran, Jr., Pawtucket, R.I., for plaintiffs.

David W. Carroll, James E. Purcell, Everett C. Sammartino, Asst. U.S. Atty., Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The plaintiffs in this action seek compensatory and punitive damages for their allegedly unlawful arrest on June 16, 1978. Defendant Gilles Roberts, a Special Agent of the Federal Bureau of Investigation, has moved for summary judgment on the basis of either the absolute immunity of *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1958), or the qualified immunity of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Plaintiffs' original complaint in this action, which was removed from the state courts, only alleged common law torts. Since removal the plaintiffs have shown an intent to prosecute this not only under the laws of the State of Rhode Island, but also under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.,* and as a *Bivens*-type action for violations of the plaintiffs' fourth amendment rights. *See* Plaintiffs' Supplemental Pre-Trial Memorandum; Plaintiffs' Memorandum .in Support of Objection to Defendants' Motion to Dismiss. Since this Court dismissed the action against the FBI in its Opinion and Order of July 25, 1983, the Federal Tort Claims Act is no longer of significance to this action. Although plaintiffs' complaint has never been amended to include the *Bivens*-type theory of relief, this Memorandum and Order will discuss the case in terms of both common law and constitutional causes of action because of the ease of amending a complaint under Rule 15 of the Federal Rules of Civil Procedure, which ease of action the plaintiffs have not seen fit to employ.[1]

## I. CONSTITUTIONAL TORT THEORY

[1] Gilles Roberts is entitled to only a "qualified immunity" defense in a *Bivens*

---

1. The plaintiffs' complaint in this action alleges only common law torts. Although Rule 15 contains a liberal standard for authorizing amendments of complaints and although this Court recognized in its Opinion and Order of July 25, 1983, that the complaint had pled facts sufficient to allege a constitutional tort action against Roberts, the plaintiffs have not attempted to amend their complaint to allege a *Bivens*-type action. Therefore, the plaintiffs will be given ten days to amend their complaint to include a constitutional tort action. If they do not, the complaint will be dismissed. *See infra.*

-type action under the fourth amendment. *See Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2733, 73 L.Ed.2d 396 (1982); *Butz v. Economou,* 438 U.S. 478, 500, 98 S.Ct. 2894, 2907, 57 L.Ed.2d 895 (1978); *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967); *Maiorana v. MacDonald,* 596 F.2d 1072, 1074 (1st Cir.1979). This defense formerly required that the official claiming it establish both his subjective lack of malice and his objective knowledge of basic constitutional rights:

> Referring both to the objective and subjective elements, we have held that qualified immunity would be defeated if an official *"knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with malicious intention* to cause a deprivation of constitutional rights or other injury...."
>
> *Harlow, supra,* 457 U.S. at 815, 102 S.Ct. at 2737 (quoting *Wood v. Strickland,* 420 U.S. 308, 321–22, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975)) (emphasis added by the Supreme Court in *Harlow*).

In *Harlow,* though, the Supreme Court noted that under the subjective element of the defense, "bare allegations of malice" had sufficed to subject officials to proceed to trial or engage in broad discovery. *Harlow, supra,* 457 U.S. at 817–18, 102 S.Ct. at 2738. In *Harlow* the Supreme Court therefore reformulated the qualified immunity standard and eliminated the subjective element of malice:

> We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See *Procunier v. Navarette,* 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978); *Wood v. Strickland, supra,* 420 U.S., at 321, 95 S.Ct., at 1000.
>
> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.... If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.... If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.
>
> *Harlow, supra,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39 (footnotes omitted).

*See Rhode Island Affiliate, American Civil Liberties Union v. Rhode Island Lottery Commission,* 553 F.Supp. 752, 771 (D.R.I.1982) (explaining how *Harlow* changed the qualified immunity defense).

Applying this standard to this case, summary judgment for defendant Gilles Roberts would be inappropriate on any constitutional claims the plaintiffs may have. No evidence was introduced that when he arrested the plaintiffs under 18 U.S.C. § 2 and § 656, this lack of knowledge by Roberts was "reasonable" under *Harlow.* 18 U.S.C. § 656 makes it a crime for an officer or employee of a federally insured bank to embezzle, steal, or misapply any of the bank's funds. 18 U.S.C. § 2 allows someone who aids or abets a crime to be punished as a principal. However, to be found guilty of aiding and abetting a violation of 18 U.S.C. § 656 even under 18 U.S.C. § 2, there must be a guilty bank official or employee who wilfully misapplied the funds. *Giragosian v. United States,* 349 F.2d 166, 167 (1st Cir.1965). This is but an application of one of the general rules of criminal law that a crime needs to have actually been committed by a principal in

order to convict someone else as an aider or abettor. 21 Am.Jur.2d *Criminal Law* § 176 (1981). Additionally, the statute states that to be a principal for a violation of it, one must be "an officer, director, agent or employee of, or connected in any capacity with" a federally insured bank. 18 U.S.C. § 656.

In this case, Roberts knew that no bank employee was considering misapplying funds. Additionally, even if Roberts' knowledge of the law was reasonable, there is a factual dispute as to whether the plaintiffs did offer anyone a bribe or whether they merely discussed "points" normally paid to a bank when a loan is closed. Therefore, if the plaintiffs had amended their complaint, this Court would not be able to grant summary judgment to Roberts on a constitutional tort theory of recovery.

## II. COMMON LAW TORT

Roberts also claims an absolute immunity from common law tort actions under *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). The plaintiffs in *Barr* alleged that they had been defamed by the malicious issuance of a press release by an agency head. *Id.* at 568, 79 S.Ct. at 1337–38 (plurality opinion of Harlan, J.). A majority of the Supreme Court concurred in the judgment that the defendant agency head should be absolutely immune from a defamation suit involving a statement within the scope of his office. *See id.* at 576–78, 79 S.Ct. at 1342–43 (Black, J., concurring); id at 569–76, 79 S.Ct. at 1338–42 (plurality opinion of Harlan, J.). The plurality opinion, however, sought to lay down a broader rule: that federal officials were absolutely immune from damages for actions taken within the "outer perimeter of [the official's] line of duty." *Id.* at 569–75, 79 S.Ct. at 1338–41. *Barr* drew no distinction between a common law tort and a constitutional tort.

The general applicability of *Barr* was brought into question by subsequent decisions. In *Pierson v. Ray, supra,* the Supreme Court, looking to the common law, granted state police officers sued under

§ 1983 only a qualified immunity defense. 386 U.S. at 555–57, 87 S.Ct. at 1218–19.

Four years after *Pierson,* in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court allowed a private plaintiff to sue federal officers directly under the Constitution for damages. *Id.* at 395–97, 91 S.Ct. 2004–05. In their discussion of the appropriateness of a damages remedy, the majority of the Court never mentioned the possibility that *Barr* might give the officers an absolute immunity. *Id.*

Even the author of the plurality opinion in *Barr,* Justice Harlan, felt by the time of *Bivens* that federal officials should not always receive the absolute immunity of *Barr:*

> while I express no view on the immunity defense offered in the instant case, I deem it proper to venture the thought that at the very least such a remedy would be available for the most flagrant and patently unjustified sorts of police conduct. Although litigants may not often choose to seek relief, it is important, in a civilized society, that the judicial branch of the National government stand ready to afford a remedy in these circumstances.

403 U.S. 398, 411, 91 S.Ct. 2005, 2012 (Harlan, J., concurring).

Finally, subsequent to *Bivens,* in *Butz v. Economou, supra,* the Court held that federal officials sued directly under the Constitution had only the same qualified immunity defense to damages liability as did state officials being sued under § 1983, as originally set out in *Pierson v. Ray; Butz, supra,* 438 U.S. at 500–01, 98 S.Ct. at 2907–08.

Since *Barr* did not distinguish between constitutional and common law torts, *Butz* presented the Court with an opportunity to overrule *Barr* by framing its decision so as to eliminate absolute immunity of a federal official for common law torts; it could have established a single standard of immunity for federal officials generally. Instead, the Court distinguished *Barr* and its forerun-

ner, *Spalding v. Vilas*, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896), as dealing only with state law claims against federal officers:

> [W]e are confident that *Barr* did not purport to protect an official who has not only committed a wrong under local law, but also violated those fundamental principles of fairness embodied in the Constitution. Whatever level of protection from state interference is appropriate for federal officials executing their duties under federal law, it cannot be doubted that these officials, even when acting pursuant to congressional authorization, are subject to the restraints imposed by the Federal Constitution.
>
> The liability of officials who have exceeded constitutional limits was not confronted in either *Barr* or *Spalding*. Neither of those cases supports the Government's position. Beyond that, however, neither case purported to abolish the liability of federal officers for actions manifestly beyond their line of duty, and if they are accountable when they stray beyond the plain limits of their statutory authority, it would be incongruous to hold that they may nevertheless willfully or knowingly violate constitutional rights without fear of liability.

*Butz, supra*, 438 U.S. at 495, 98 S.Ct. at 2905 (footnote omitted).

In a footnote to this passage, the Court emphasized that it had not considered the appropriateness of lower courts applying *Barr* to common law claims:

> We view this case, in its present posture, as concerned only with constitutional issues. The District Court memorandum focused exclusively on respondent's constitutional claims. It appears from the language and reasoning of its opinion that the Court of Appeals was also essentially concerned with respondent's constitutional claims. See, e.g., 535 F.2d, at 695 n. 7. The Second Circuit has subsequently read *Economou* as limited to that context. See *Huntington Towers, Ltd. v. Franklin Nat. Bank*, 559 F.2d 863, 870, and n. 2 (1977), cert. denied *sub nom Huntington Towers Ltd. v. Federal Reserve Bank of N.Y.*, 434 U.S. 1012,

98 S.Ct. 726, 54 L.Ed.2d 756 (1978). The argument before us as well has focused on respondent's constitutional claims, and our holding is so limited.

*Id.* 438 U.S. at 495 n. 22, 98 S.Ct. at 2905 n. 22.

The Court did, however, state its belief that

> [t]he *Scheuer* principle of only qualified immunity for constitutional violations is consistent with *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Spalding v. Vilas*, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896), and *Kendall v. Stokes*, 3 How. 87, 11 L.Ed. 506 (1847). Federal officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law. But we see no substantial basis for holding, as the United States would have us do, that executive officers generally may with impunity discharge their duties in a way that is known to them to violate the United States Constitution or in a manner that they should know transgresses a clearly established constitutional rule. The principle should prove as workable in suits against federal officials as it has in the context of suits against state officials.

*Id.* 438 U.S. at 507, 98 S.Ct. at 2911.

The Supreme Court carefully distinguished constitutional tort disability from common law tort liability, thereby implying that *Barr*'s absolute immunity from common law tort liability remains good law. This Court does not believe that this distinction is a very strong one. Although this Court recognizes that it would be anomalous to hold that a federal official may knowingly violate the federal Constitution with impunity, this Court believes that it would be equally anomalous to hold that federal officials may knowingly violate state common law rights with absolute impunity. By including some rights in the Constitution, the Framers could not have intended that other common law rights were entitled to less protection. As the ninth amendment states, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage oth-

ers retained by the people." U.S. Const. Amend. IX. Justice Rehnquist noted in a concurring and dissenting opinion in *Butz* that "[t]he most heinous common-law tort surely cannot be less important to, or have less of an impact on, the aggrieved individual than a mere technical violation of a constitutional proscription." *Butz, supra,* at 523, 98 S.Ct. at 2919 (Rehnquist, J., joined by Burger, C.J., and Stewart and Stevens, JJ., concurring in part and dissenting in part). *See* Note, Federal Executive Immunity from Civil Liability in Damages: A Reevaluation of *Barr v. Matteo,* 77 Colum.L.Rev. 625, 639 (1977) [hereinafter cited as Columbia Note]; Note, Qualified Immunity for Federal Officials: A Proposed Standard for Defamation Cases, 58 Tex.L. Rev. 789, 794 (1980) [hereinafter cited as Texas Note].

Not only does the distinction rank rights in order of importance, it also can lead to anomalous results when state and federal officials cooperate. If, for instance, an FBI agent and a state trooper were to illegally arrest a suspect, the FBI agent could only be liable under a constitutional tort theory. However, since the common law has traditionally allowed state policemen only a qualified immunity defense, *Pierson v. Ray, supra,* 386 U.S. at 555–57, 87 S.Ct. at 1218–19, the trooper could be found liable under both common law and constitutional tort theories. The FBI agent could therefore escape liability which could be imposed on the trooper for any common law tort which does not rise to the level of a constitutional tort. *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim [under the eighth amendment], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."); *Paul v. Davis,* 424 U.S. 693, 699–702, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976) (all common law torts are not also constitutional torts).

As federal officials are absolutely immune under *Barr* from any liability for actions which give rise to only common law claims, one might argue that this protection is necessary to protect federal officials and to encourage them in the fearless discharge of their official duties. *Gregoire v. Biddle,* 177 F.2d 579, 580–81 (2d Cir.1949) (Hand, C.J.), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). However, state governments, with their greater impact on the day-to-day affairs of citizens, are not handicapped by the lack of absolute immunity against common law causes. In addition, a general qualified immunity would leave intact the many absolute and qualified common law privileges. *See, e.g.,* W.L. Prosser, Law of Torts §§ 16, 114, 115 (4th ed. 1971). Moreover, since the officials have only a qualified immunity against constitutional tort claims and since many common law torts can be turned into constitutional torts, it is unlikely that federal officials rely on the extra measure of protection which *Barr* gives them in guiding their official actions. *See* Comment, 27 Am.U.L.Rev. 863, 896 (1978); Casenote, 20 B.C.L.Rev. 575, 597 (1979).

Arguments derived from federalism for the distinction between common law and constitutional torts fare no better. First, one might contend that the existence of fifty different common law rules would make it impossible for federal officials to guide their conduct if bound by them. *Cf. Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943) (the obligation of the United States on its commercial paper should be governed by a uniform federal rule—the application of state law "would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states.") Second one might argue that federal officials should not be hampered in the conduct of their duties by the action of state law. *See Butz, supra,* 438 U.S. at 490, 98 S.Ct. at 2902 (citing *Osborn v. Bank of United States,* 22 U.S. (9 Wheat.) 738, 865–66, 6 L.Ed.2d 204, 234 (1824).

The first argument can be rebutted by the generalized nature of state common law and by the nature of the qualified immunity defense itself. As any lawyer

knows, the common laws of the various states tend to resemble each other closely. Although the differences may impair the ability of the federal government to implement some programs and thus require the promulgation of a uniform federal common law rule, a federal official could guide his actions along the lines of the common law in the state in which he serves, if his actions are confined to that state, or to the contours of the "majority rule", if his activities are not confined to one state. In those instances in which an official following the majority rule is sued, he would be covered by the qualified immunity of *Harlow* because he either should not have been reasonably required to have known of the rule, or the rule could be deemed to not have been clearly established.

The second contention, that officials might be hampered by state law imposing liability for their legitimate actions, also lacks merit. If the federal law the official acts under conflicts with state law, the Supremacy Clause of the Constitution ensures that the state law must yield. U.S. Const. art. VI, cl. 2. Moreover, the officials' right to remove any action brought against him for his official acts from state court to federal court guarantees the defendant a forum familiar with, and sympathetic to, federal law. 28 U.S.C. § 1442.

If this Court were writing on an empty slate, it would hold that federal officials such as defendant Roberts were entitled to only a qualified immunity defense against common law torts. *See Queen v. Tennessee Valley Authority*, 689 F.2d 80, 87 (6th Cir.1982) (Merritt, J., dissenting), *cert. denied*, — U.S. —, 103 S.Ct. 1770, 76 L.Ed.2d 344 (1983) (arguing that most federal officials should be entitled to only a qualified immunity defense); *Granger v. Marek*, 583 F.2d 781, 786–87 (6th Cir.1978) (Merritt, J., dissenting) (arguing, in a post-*Butz* decision, that IRS agents should be entitled to only a qualified immunity defense against a common law tort action). However, given the Supreme Court's careful distinguishing of *Barr* in *Butz*, this Court must conclude that *Barr* remains viable. *Queen, supra*, at 84 (majority opinion); Note, 52 Temp.L.Q. 102, 102–03

(1979); Texas Note at 793, 1979 Wis.L.Rev. 604, 618–19. Defendant Roberts is therefore entitled to an absolute immunity in the common law actions.

Therefore, this Court orders that defendant Gilles Roberts' motion for summary judgment as to plaintiffs' common law tort claims be GRANTED, but that his motion be DENIED as to any *Bivens* action the plaintiffs may have. However, the complaint not having been amended to include a constitutional tort, even after it having been recognized that plaintiffs could plead one, *see* note 1 *supra*, plaintiffs' action against defendant Roberts will be automatically dismissed if plaintiffs do not amend their complaint within ten days.