**Mansour GUITY, Plaintiff,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant.**

Civ. No. 3–88–012.

United States District Court, E.D. Tennessee, N.D.

June 30, 1989.

W.P. Boone Dougherty, Knoxville, Tenn., for plaintiff.

James E. Fox, Deputy Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, Thomas F. Fine, Brent R. Marquand, and Thomas A. Robins, Legal Dept., Tennessee Valley Authority, Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

JARVIS, District Judge.

### I.  *Introduction*

This is an action for damages brought by plaintiff Mansour Guity against defendant Tennessee Valley Authority (TVA) under state law theories of inducement to breach contract, T.C.A. § 47–50–109, and the tort theory of outrageous conduct. Plaintiff, a former employee of TVA, claims that the defendant induced Wanda Burpee, a nurse at Peninsula Psychiatric Hospital, to obtain from plaintiff, a patient at the hospital, information regarding plaintiff's "personal matters and affairs", as well as plaintiff's "matters and affairs relating to TVA". Currently pending is defendant's motion to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6), Federal Rules of Civil Procedure, or in the alternative for summary judgment. Since matters outside the pleadings have been submitted and considered by the court, the motion will be treated as one for summary judgment. Rule 12(b), Federal Rules of Civil Procedure.

### II.  *The Allegations of the Parties*

Plaintiff's complaint alleges that since January 6, 1987 plaintiff has been hospitalized for serious medical and emotional problems directly and proximately caused by TVA; that by being admitted to the hospital "plaintiff entered into a contract with said hospital whereby it was to provide him with competent medical care and treatment and further was to provide him with complete confidentiality"; that Wanda Burpee was a registered nurse employed by the hospital and assigned to plaintiff's care and treatment; and that Wanda Burpee, as early as February, 1987, was guilty of gross, willful, and wanton negligence with reference to the plaintiff in that she seriously and extensively neglected and deliberately mishandled the proper medical care and treatment of the plaintiff and, further, seriously and extensively breached the obligation of confidentiality with reference to the plaintiff.

The complaint further alleges that Ms. Burpee seriously and intentionally invaded the privacy of the plaintiff; that Ms. Burpee maliciously and willfully sought and obtained information from the plaintiff concerning his personal matters and affairs and his matters and affairs relating to TVA and directly communicated this information to representatives of TVA; that these actions were taken because of the "direct and willful inducement and instigation" of TVA and its employees and representatives; that Ms. Burpee seriously and extensively breached the duty of care which she owed to the plaintiff; that this conduct proximately and directly caused a serious and extensive breach of contract between the plaintiff and the hospital; that TVA actively solicited and even paid Wanda Burpee to obtain this information from plaintiff; that TVA's conduct constitutes a violation of T.C.A. § 47–50–109 in that it induced the hospital through Ms. Burpee to breach its contract with the plaintiff; that defendant's conduct was gross, willful and wanton; that plaintiff is entitled to treble damages for its violation of T.C.A. § 47–50–109; and that defendant's conduct also constitutes outrageous conduct actionable under Tennessee common law.

In support of its motion for summary judgment, defendant argues that: (1) the treble damages remedy under T.C.A. § 47–50–109 constitutes punitive damages which may not be recovered against a federal agency such as TVA; (2) that the Supremacy Clause of the United States Constitution exempts TVA from state regulation or control and requires that this action be dismissed; (3) that TVA is absolutely immune from the actions complained of since they involve a discretionary function; (4) that the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101–8193, (FECA) bars plaintiff's claims for emotional distress; (5) that TVA's actions were privileged and did not create any liability under T.C.A. § 47–50–109; and (6) that TVA's conduct was not outrageous as a matter of law. Because ample other grounds exist for dismissal of this lawsuit, not all of these issues will be addressed.

## III. *Analysis*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues to which there is no dispute regarding the material facts. *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in the light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.*

■ Taken from the depositions and affidavits submitted by the parties, the uncontradicted proof shows that from January, 1987 through April, 1987 TVA did obtain some information from sources at the hospital regarding the plaintiff. However, there is no proof presented that would indicate that TVA placed an informant in the hospital to spy on the plaintiff or paid or otherwise induced an informant to provide information regarding the plaintiff. Rather, the proof is uncontradicted that the contacts between the alleged source and TVA were all initiated by someone at the hospital and not TVA. The informant, whether it was Ms. Burpee or someone else, notified TVA representatives of various threats plaintiff had allegedly made while a patient at the hospital, both to himself and to TVA officials. The source further notified TVA representatives that the plaintiff had armed himself with a pistol because he was afraid that someone at TVA was "out to get him". An anonymous source also alleged that plaintiff had mailed some documents to Tehran, Iran. As a result of these contacts, Special Agent Bradley Bonnell of TVA's Office of the Inspector General contacted Ms. Burpee to discuss alleged threats made by plaintiff. The proof is further uncontradicted that Ms. Burpee had a romantic relationship with the plaintiff while he was under her care at the hospital. There is no direct or circumstantial proof in the record which would indicate that TVA's representatives did anything other than receive information from Ms. Burpee or an anonymous caller regarding threats made by plaintiff toward TVA officials and others and conduct a brief investigation.

The TVA investigation was conducted by its Office of the Inspector General. That office was established by TVA's Board of Directors pursuant to 16 U.S.C. § 831b and given the duty to investigate and report "on information from any source on ... a

substantial and specific danger to the public health and safety". *See* Affidavit of D. Bradley Bonnell, Exhibit # 1 at p. 3.

Despite the broad consent to suit embodied in TVA's enabling act, 16 U.S.C. § 831c(b), a number of courts, including the United States Court of Appeals for the Sixth Circuit, have held that as a matter of "public policy" TVA cannot be subject to liability for damages when it is engaged in certain governmental functions. *See Queen v. Tennessee Valley Authority*, 689 F.2d 80, 85–86 (6th Cir.1982). The Sixth Circuit noted:

> These decisions demonstrate that in certain limited situations the TVA is exempt from liability arising out of the exercise of certain wholly governmental functions, where the TVA acts solely as the Government's agent and where the United States itself would not be liable. The nonliability is not an incident of immunity but the result of the entitlement of the TVA, when it acts solely as a governmental entity, to assert as well established substantive principle of nonliability which the Government itself would be entitled to assert and which the Government has not otherwise waived.

*Id.*, at 86. In the instant case, the actions taken by TVA officials in investigating the reports received from the hospital were made pursuant to the statutory mandate of 16 U.S.C. § 831b which authorized the TVA Board of Directors to create the Office of Inspector General and to define its duties to include investigation and reporting on "information from any source on … a substantial and specific danger to the public health and safety." Since TVA's actions in this case were taken pursuant to specific statutory authority, they cannot be the subject of an action for damages. *See Queen*, 689 F.2d at 86.

■ The above ground alone would be enough to warrant dismissal of this action. However, even if it did not warrant dismissal plaintiff's complaint cannot survive the pending motion for summary judgment on either an inducement to breach contract theory or an outrageous conduct theory. In order to prevail under the inducement to breach contract statute, T.C.A. § 47–50–109, the plaintiff must prove the following elements:

(1) That there was a contract;

(2) That TVA had sufficient knowledge of the contract;

(3) That TVA intended to induce its breach;

(4) That TVA acted maliciously;

(5) That the contract was breached;

(6) That TVA's acts were the proximate cause of the breach; and

(7) That damages resulted from the breach.

*Edwards v. Travelers Insurance Company*, 563 F.2d 105, 120 (6th Cir.1977).

In the instant case, at least two of these elements are not present. First, the contract which plaintiff alleges existed between himself and the hospital apparently was implied. Plaintiff contends that "[b]y being admitted to said hospital, the Plaintiff entered into a contract with said hospital whereby it was to provide him with competent medical care and treatment and further was to provide him with complete confidentiality." Although it might be said that the relationship could form some implied contractual duty to provide plaintiff with adequate medical care, there is no proof in this case that the medical care that plaintiff received was anything less than adequate. The gist of plaintiff's complaint appears to be that the hospital, through the actions of Ms. Burpee, failed to maintain his confidentiality and thereby breached its contract. There may be an implied contractual duty on the part of the hospital, as well as a legal obligation, to maintain confidentiality. However, it is equally clear that the information divulged voluntarily by Ms. Burpee dealt almost exclusively with plaintiff's threats of violence to TVA employees which were passed on to Burpee by plaintiff not necessarily in the relationship of nurse-patient, but as a matter related as a result of the close personal relationship that existed between the two.

In any event, the court finds that as a matter of law defendant's actions could not have been the proximate cause of a breach of contract. Proof in the record is uncon-

tradicted that the contacts between the source at the hospital and TVA were initiated by the source, either Ms. Burpee or someone else, and not TVA. There is no proof from which it could reasonably be concluded that any inducement by TVA caused the alleged breach of contract. The alleged confidential information was provided willingly by the source and without any inducement by TVA.

■ Finally, there are several situations in which a privilege to procure a breach of contract exists. First, there is a privilege for a person interfering with a contract in order to protect another person. This privilege has been described as follows:

> [A]n impersonal or disinterested motive of a laudable character may protect a defendant in his interference. This is true particularly where he seeks to protect a third person toward whom he stands in a relation of responsibility, as in the case of a mother endeavoring to exclude a diseased person from her child's school, ... provided that the steps taken are not unreasonable in view of the harm threatened.

*Edwards*, 563 F.2d at 121, *citing Prosser, The Law of Torts* (4th Edition), 943–44.

A second privilege is described as follows:

> [T]here may also be a privilege to protect the public interest, as by removing a danger to public health or morals, or making complaint of the misconduct of an employee of a public utility, or taxpayers objecting to the expenditure of public money.

*Id.*, at 122, *citing Prosser, supra,* at 944. In the instant case, the proof is uncontradicted that TVA received information from the source at the hospital of threats made by the plaintiff to both TVA employees and the public in general. These reports clearly warranted at least cursory investigation. Even if plaintiff's complaint sufficiently alleged each of the elements of inducement to breach a contract, defendant's conduct was justified under either of these theories of justification. Significantly, plaintiff does not deny that he made these threats.

■ The elements of the tort of outrageous conduct have been defined under Tennessee law as follows:

> Liability for the tort of "outrageous conduct" exists only where (1) the conduct of the defendants has been so outrageous in character, and so extreme in degree, as to be beyond the pale of decency, and to be regarded as atrocious and utterly intolerable in a civilized society, and (2) the conduct results in serious mental injury.

*Swallows v. Western Electric Company,* 543 S.W.2d 581 (Tenn.1976). The undisputed proof in the record is that TVA's Office of Inspector General conducted an investigation regarding threats made by Mr. Guity to the public in general once it received such information from Nurse Burpee and the anonymous source. There was no proof from which it might reasonably be concluded that any conduct on the part of TVA constituted "outrageous conduct" actionable under Tennessee law.

## IV. *Conclusion*

In light of the foregoing, defendant's motion for summary judgment [Court File # 5] will be GRANTED and this action DISMISSED.

Order accordingly.