DANIEL CERNAK & another *vs.* KAY-VEE REALTY COMPANY,
INC. & another.

Hampshire.    September 30, 1960. — November 3, 1960.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, & CUTTER, JJ.

*Water.   Drain.   Real Property,* Water, Drain.   *Equity Pleading and
Practice,* Parties; Decree; Master: findings.

In a suit in equity against a seller and the purchaser of a tract of land to
enjoin the flow of water from a drainage system therein onto the plain-
tiff's nearby premises, where it appeared that prior to the sale the seller
had merely filed a subdivision plan of the tract, signed an agreement
with the town, and posted a bond and that after the sale the purchaser
did the actual construction of the drainage system and of streets,
houses, and utilities on the tract and the bond was "released," the
plaintiff was not entitled to relief against the seller.   [316]
In a suit in equity heard on the report of a master, a contention that the
final decree was "not in accordance with the evidence" was not open
where there were no summaries or report of evidence.   [318]
A finding of a master in a suit in equity, that after the defendant pur-
chased land and installed therein a drainage system channeling water
into a discharge pipe located near a culvert leading to the plaintiff's
land more water flowed through the culvert onto the plaintiff's land than
before the purchase, was not deprived of its force by reason of lack of
a finding of how much more flowage occurred.   [318]
Facts reported by a master in a suit in equity respecting installation by
the defendant on its land of a drainage system by which water from
five streets built on the land by the defendant, percolating underground
water, and water from a spring above ground was collected and chan-
neled into a discharge pipe emptying on the land, whence the water
flowed across a small ditch on adjacent land of a railroad and through a
culvert under the railroad tracks onto land of the plaintiff warranted
conclusions that the defendant had interfered with the natural flow of
water, had increased the flow of water from its land, and had dis-
charged it by artificial means upon the land of the plaintiff; and a de-
cree enjoining the defendant from permitting water to flow onto the
plaintiff's land and awarding damages to the plaintiff was affirmed.
[318–319]

BILL IN EQUITY, filed in the Superior Court on January 17,
1958.

A demurrer of the defendant Kay-Vee Realty Company, Inc. was overruled by *O'Brien, J.*, who subsequently heard the suit on the report of a master.

*Luke F. Ryan*, (*Joseph N. Donais* with him,) for the defendants.

*Edwin P. Dunphy*, (*Lewis A. Whitney* with him,) for the plaintiffs.

WILKINS, C.J.   The plaintiffs, the owners of a tract of land in Easthampton, bring this bill in equity to enjoin the flowage onto their real estate of water from a surface drainage system on land formerly of the defendant Kay-Vee Realty Company, Inc., and now of the defendant K. V. Homes, Inc.   A demurrer of Realty was overruled, and Realty appealed.   The case was referred to a master, who took two views and, after hearing, filed a report, which was confirmed.   The defendants appealed from a final decree, which enjoined Homes from permitting water to flow onto the plaintiffs' property and ordered the payment by the defendants of $30 damages and interest.

The Realty demurrer raises the question of want of equity which is equally presented by the appeal from the final decree, and need not be given separate consideration.   It appears from both the bill and the master's report that Realty has had no interest in the real estate since June 10, 1957. Realty, when the previous owner, filed a plan for subdivision and signed an agreement with the town, and posted a bond in which the obligee was the town.   On June 10, 1957, Homes bought the land from Realty, and later did the actual construction of streets, houses, and utilities.   The town approved the street layout and the installations and "released" the bond.   It is clear that Realty has done nothing to cause water to flow onto the property of the plaintiffs. Filing a subdivision plan and posting a bond which has been "released" are not enough.   The plaintiffs' contention that the defendants worked in unison is not sustained by the record.   The demurrer should have been sustained.

According to the master's report, the Homes land formerly consisted of undeveloped rolling hay fields bounded

on the north by Route 10 and on the south by the bed and tracks of the New York, New Haven and Hartford Railroad, toward which it sloped. Directly across the railroad the plaintiffs' tract, consisting of about 107 acres, bounded for a greater distance along the railroad than did the Homes land. Passing under the railroad bed is a stone culvert, which has been in place for thirty or more years. The culvert opens directly onto the land of the plaintiffs. Exactly opposite and north of the culvert is a surface system discharge pipe constructed by Homes in the rear of one of its lots. The surface system installed by Homes collects all the water which runs onto the five streets in the project, and channels it to the discharge pipe. The water, after coming out of this discharge pipe, runs across a small gully or ditch on railroad land and passes through the culvert and out onto the plaintiffs' land. The surface drainage system also collects percolating underground water and channels it to the discharge pipe. A spring which bubbled above ground and flowed down to the railroad culvert was piped by Homes to a catch basin whence it runs into the discharge pipe.

Other statements of the master must be quoted at some length. ''There was conflicting testimony as to the amount of water, if any, on the plaintiffs' land before June, 1957, in relation to the amount of water since that time. . . . I find that some water flowed through this railroad culvert onto the plaintiffs' land before the defendant Kay-Vee Realty Company, Inc., bought this tract; however, how much water flowed through the pipe, at what times of the year, or for how many years, I cannot make a finding from the evidence. . . . [A] I find from logical inference that because of the surface sewer installation more water now flows through this railroad culvert than did formerly. [B] However, how much more in terms of fractions or percentages I cannot tell from the evidence. I find the water now flowing through the railroad culvert will make the plaintiffs' land, opposite the southerly end of the railroad culvert, wet and make it more difficult to drive vehicles over this spot. . . . I find that this water passes onto the plaintiffs' land and then

runs down toward the brook [on the plaintiffs' land]. I find that this area around the brook is very swampy and marshy. I cannot tell from the evidence how much of this is due to the brook, and how much is from the water coming through the railroad culvert. However, I find that in an area 20 to 30 feet wide running east and west, and for an area 100 feet long running north and south from the southerly end of the railroad culvert, the wetness to the plaintiffs' land is due to the water coming through the railroad culvert.''

The defendant Homes (hereinafter called the defendant) contends that the final decree ''is not in accordance with the evidence and facts which were properly found by the master.'' There being no summaries or report of the evidence, no such arguments based upon the evidence are open. *Anderson Corp.* v. *Blanch,* 340 Mass. 43, 49, and cases cited.

We shall consider briefly certain contentions that the final decree is not in accordance with the findings. Comparing statements A and B in the quotations above made from the master's report, we observe no contradiction nor nullification of the former by the latter. The master could properly find that more water now flows through the culvert even though he might be unable to find the quantum. There is no contradiction by other findings.

Many of the defendant's contentions ignore the master's findings. Against such findings it cannot rightly assert that it has not interfered with the natural flow of water in its natural direction; nor that there has been no increased flow from the defendant's land attributable to the defendant; nor that there has been no discharge by artificial means upon the land of the plaintiffs. The defendant cannot bring itself within the principle stated in *Kuklinska* v. *Maplewood Homes, Inc.* 336 Mass. 489, and the cases cited at pages 492–493, to the effect that ''A landowner is permitted to improve his land by changes of grade, even if the natural course of surface water is thereby changed on the landowner's land, so long as the water is not discharged on the land of another, as a consequence of a definite, artificial channel, di-

rectly or by seepage." In *Gannon* v. *Hargadon,* 10 Allen, 106, there cited, there was no definite artificial channel.

The defendant makes the shallow assertion that there is no liability to the plaintiffs because the water is first discharged upon railroad property. But, of course, if, in consequence, there is a continuing flow onto the plaintiffs' tract, the title of an intervening landowner cannot serve to filter the defendant's responsibility. Nor can the defendant be exonerated because other sources may contribute to the flow and so may "assist in throwing an artificial stream upon land of another." See *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 296.

The defendant cannot successfully ask us to take judicial notice of a prescriptive right when the master has found that a flow of water through the culvert for twenty years has not been proved.

The order overruling the demurrer is reversed, and instead an interlocutory decree is to be entered sustaining the demurrer. The final decree must be reversed as to the defendant Kay-Vee Realty Company, Inc., and a new final decree should be entered dismissing the bill against it, with costs of appeal. As against the defendant K. V. Homes, Inc., the final decree is affirmed with costs of appeal.

*So ordered.*