CHARLES J. KAPAYANIS & another vs. JEROME FISHBEIN
& another.

Essex.     March 8, 1962. — April 4, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Water. Real Property, Water. Equity Pleading and Practice, Damages, Injunction. Damages, For tort.*

Where gutters on a house were connected with dry wells which overflowed
    in times of heavy rains and channelled water in substantial quantities
    onto adjacent, lower land, the owner of the lower land was entitled to
    relief in a suit in equity against the other owner, which, in the circum-
    stances, in view of the fact that the plaintiff had done certain work
    correcting the situation by leading the water off into a street drain,
    should take the form of damages in the amount of the reasonable cost
    of such work, without an injunction.

BILL IN EQUITY, filed in the Superior Court on October 31,
1958.

The suit was heard on a master's report by *Gourdin*, J.

*John J. Ryan, Jr.*, for the defendants.

*Dean E. Nicholson*, for the plaintiffs.

CUTTER, J.   The plaintiffs own land adjacent to, but at a
lower elevation than, land of the Fishbeins.   The plaintiffs
completed a house on their land in July, 1958.   The Fish-
beins in 1958 constructed on their land a large ranch type
house with a roof having an area of 3,278 square feet.
Prior to the erection of the Fishbeins' house, "the plain-
tiffs had no trouble with water on their land."   After the
Fishbeins' house was built, water "came from the roof and
flowed onto . . . [the plaintiffs'] land causing pools of
water to accumulate, the flow of water being increased
by 75%."   To alleviate the trouble, the Fishbeins "con-
structed gutters with roof drains . . . connected with a
series of dry wells."   These "proved . . . inadequate in
times of very heavy rains."   The wells then overflowed
and water ran to the plaintiffs' property.

The plaintiffs brought this bill to enjoin the Fishbeins from discharging water upon the plaintiffs' land and to obtain damages.[1] A master's report and supplemental report, upon the basis of which the facts have been stated, were confirmed. A final decree enjoined the Fishbeins from permitting water to be collected and to overflow on their land so that it would run down upon the plaintiffs' land and awarded the plaintiffs as damages $525, with interest. The Fishbeins appealed.

In addition to the master's findings already stated, he found that "[in] heavy rains water . . . continues to flow from the roof and gutters of the . . . [Fishbeins'] house and on to the plaintiffs' land. These conditions can be corrected by discharging the water from a gutter at the foot of the slope and connecting it with a [street] drain" below the plaintiffs' land, at a cost of $525. The plaintiffs have now done this work. The master also found "that the plaintiffs have sustained nothing more than nominal damage as a result of water flowing on their land from the . . . [Fishbeins'] property."

1. The Fishbeins could erect their ranch house, without regard to its effect upon surface water which would otherwise flow over the land covered by the house, "so long as the water is not discharged on the land of another, as a consequence of a definite, artificial channel." See *Kuklinska* v. *Maplewood Homes, Inc.* 336 Mass. 489, 492–493, and cases cited. We infer, however, from the master's subsidiary findings that the gutters and dry wells constituted an artificial channel and that, in times of heavy rains, water (which might otherwise have been absorbed or have flowed elsewhere if it were not for the gutters and dry wells) was discharged upon the plaintiffs' land in amounts sufficient to entitle them to some relief. See *Cernak* v. *Kay-Vee Realty Co. Inc.* 341 Mass. 315, 317–319.

2. The master's finding that "the plaintiffs have sustained nothing more than nominal damage" is ambiguous. It may have no reference to the future and may mean only

---

[1] A counterclaim by the Fishbeins is no longer pressed by them.

that past excessive discharges of water have caused no lasting or substantial injury to the plaintiffs. The finding that in "heavy rains water still continues to flow . . . to the plaintiffs' land" indicates that the master thought that the flow was in more than minute quantities "so small as to be inconsequential." Cf. *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 294. His finding that the flow of water to the plaintiffs' land in times of "heavy rains" can be cured by an expenditure of $525 also suggests the existence of a continuing undesirable condition which should be cured. If the condition is one which may cause significant future injury, then the plaintiffs are entitled to damages. The trial judge properly concluded that damages should be in the sum of $525, the reasonable cost of the work done by the plaintiffs to prevent annoyance and possible injury from future recurrent, excessive discharges. It would be inappropriate in the circumstances to order inquiry whether the diminution in market value of the plaintiffs' land caused by the possibility of such discharges was less than $525. See *Belkus* v. *Brockton,* 282 Mass. 285, 290–291. In view of the finding that the expenditure of $525 would cure the difficulty, this is not a situation that now justifies injunctive relief.

3. The final decree is to be modified by striking out the provision for injunctive relief. As so modified, the final decree is affirmed.

*So ordered.*