**John A. QUEEN and Queen Electric Manufacturing Company**

v.

**TENNESSEE VALLEY AUTHORITY, Mike Butler, Craven Crowell**

**Civ. No. 3–80–359.**

United States District Court, E. D. Tennessee, N. D.

Dec. 11, 1980.

---

Richard W. Wiseman, Brown, Herman, Scott, Dean & Miles, Fort Worth, Tex., William H. Skelton, Knoxville, Tenn., for plaintiffs.

Herbert S. Sanger, Jr., Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, Robert C. Glinski, Edwin W. Small, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

In this action plaintiffs seek damages and declaratory and injunctive relief for libel and slander against the Tennessee Valley Authority (TVA) and Mike Butler and Craven Crowell, both employees of TVA. Defendants have moved for summary judgment.

Plaintiffs manufacture and market a product called a Phase Liner. Plaintiffs claim that the Phase Liner will reduce electric bills of consumers significantly once installed. TVA claims that the Phase Liner will not reduce electric bills for residential and small commercial consumers of electricity within the area served by TVA. It is this claim by TVA that is the subject of this litigation.

During this controversy, various TVA employees expressed TVA's position regarding the Phase Liner. In September, 1978, at the request of television news reporters in Nashville, Tennessee, Walter J. Szelich appeared on two Nashville television stations. Both appearances followed broadcasts by the stations approximately one week earlier on which plaintiff Queen appeared and demonstrated the Phase Liner. Szelich discussed the function of the Phase Liner and stated that it would not reduce the electric bills of residential or small commercial consumers of electricity. Later he prepared a "Report on the Capability of the Phase Liner Device to Reduce Electric Bills in the TVA Service Area." That report sets out TVA's position on the Phase Liner and explains Szelich's laboratory tests of the device. (Ex. 4 to Affidavit of Walter J. Szelich, Jr.) In July and August, 1980,

Szelich stated TVA's position on the Phase Liner to the Clarksville Department of Electricity at its request. (Szelich Affidavit).

In June and July, 1980, R. J. Thompson responded to an inquiry from Bob Sherborne of *The Tennessean* regarding the Phase Liner and explained TVA's position. Thompson also accompanied Szelich on July 31, 1980 to explain TVA's position in response to the inquiry from the Clarksville Department of Electricity. (Affidavit of R. J. Thompson).

On or about July 24, 1980, Louis M. Gwin, Jr. and Clark Reid, an editor under Gwin, prepared a press release entitled "'Black Boxes' Not Key to Energy Conservation." Mike Butler was listed as contact spokesperson on the release. (Affidavit of Louis M. Gwin, Jr.)[1]

These statements of TVA's position by TVA employees form the basis of this action. In addition, defendant Crowell made an allegedly defamatory statement in response to an inquiry from Jack Seamonds, an Associated Press Reporter. According to Seamonds,

> Mr. Crowell informed me that the owner of Queen Electric Manufacturing Company, John Queen, had appeared on a television program with an electrical engineer for the TVA. During the television talk show, the engineer disputed Queen's claims that the Phase Liner saves energy. Subsequent to the television program Mr. Crowell said Queen filed a libel action against TVA charging that the TVA engineer who appeared with him on television had libeled his company and his product. Mr. Crowell told me the libel suit which asked for damages of $5 million had been dismissed with prejudice by the Federal Court in Knoxville. Mr. Crowell told me the judge who dismissed the suit had ruled that TVA by its nature had the right to comment on a device that was purported to save electricity. (Seamonds Deposition Upon Written Interrogatories, Answer to Interrogatory 18.)

From this information, Seamonds prepared the following news story:

> In mid-1979, the Tennessee Valley Authority—the world's largest producer of electric energy—questioned the validity of Phase Liner claims. The inventor and manufacturer, James Queen and Queen Electric Company of Fort Worth, Texas, filed and lost a $5 million libel suit in Federal Court.
>
> TVA spokesman, Craven Crowell, said the Judge dismissed the complaint with prejudice because the twelve state utility has the right to comment on matters affecting electric production. (Seamonds Deposition Upon Written Interrogatories, Answers to Interrogatories 16, 17 and 18).

In fact, the plaintiff in the litigation referred to above was Phase Liner Energy Savings Corporation, a distributor and franchising agent for plaintiff Queen's company. (Affidavit of Robert C. Glinski). Queen's deposition was taken in connection with the lawsuit, but he states in his affidavit that he did not control or direct the lawsuit. (Affidavit of John A. Queen).

■ Clearly, there are some disputed facts in this case, most notably whether or not the Phase Liner will reduce the electric bills for residential consumers or small commercial users. However, it is equally clear that there is no genuine issue as to any material fact with respect to the immunity of the TVA employees in this case. An allegedly defamatory statement by a federal official who has discretionary responsibility, made within the scope of his duties, does not subject the official to civil liability. *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Spalding v. Vilas*, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896); *Granger v. Marek*, 583 F.2d 781 (6th Cir. 1978). This Court's recent decision in *Walters v. Tennessee Valley Authority*, 503 F.Supp. 111 (1980), *notice of appeal filed* (Nov. 19, 1980), is on point. In *Walters*, the plaintiff sought damages from TVA and

---

1. Plaintiffs also rely on a letter written by S. David Freeman. In a memorandum and order filed in this case on December 3, 1980, the Court ruled that the letter could not be the subject of a libel action.

three employees because of an allegedly libelous statement released by TVA. The statement referred to plaintiff's job performance in TVA's Home Insulation Program. The defendant TVA employees held the positions of District Manager of the Eastern District Office of TVA's Office of Power; Manager of Media Relations; and Coordinator of the District Offices of TVA's Office of Power. This Court held that:

> Since all acts performed and statements made which form the basis of this lawsuit were done by officials of TVA and were "within the outer perimeter of their lines of duty," each of the individual defendants is absolutely immune from tort liability arising therefrom.

The same must be said in this case. Each of the TVA employees who was involved in making the statements at issue has submitted an affidavit and job description. Plaintiffs have offered no evidence to the contrary.

Defendant Michael Butler was Manager of Media Relations when the press release entitled " 'Black Boxes' Not Key to Energy Conservation" was released. In this position he was responsible for maintaining "daily contact with the news media in the Tennessee Valley and beyond and serve[d] as key public spokesperson for the agency on matters related to TVA." (Ex. 1 to Affidavit of Michael L. Butler). Defendant Craven Crowell was Director of Information for TVA when he committed his allegedly libelous acts. As such, he served as head of TVA's Information Office. The Information Office "investigates and responds to expressions of public concern about any TVA program" and "issues or approves issuance of news releases" and "serves as point of contact with the press." (Exs. 1–3 to Affidavit of Craven Crowell, Jr.) Louis Gwin was Assistant Director of Information. He was "responsible for managing all TVA contact with the press" and supervising "the Broadcast Media Staff, field information representatives, and the Information Office spokesman." (Ex. 1 to Affidavit of Louis M. Gwin, Jr.) Clearly, these individuals had the authority to make the statements at issue here.

Walter Szelich and R. J. Thompson are registered professional engineers. From February 24, 1980, until October 19, 1980, Szelich was supervisor of the commercial and industrial section of TVA's Kentucky District Office. Prior to that time he was an electrical demonstration representative in TVA's Central District Office in Nashville. (Affidavit of Walter J. Szelich, Jr.) Thompson was electrical demonstration representative with TVA, and served as unit supervisor of the commercial section in the Central District Office of TVA's Office of Power, located in Nashville, Tennessee. (Affidavit of R. J. Thompson). The job description of an electrical demonstration representative states that he:

> Presents talks and slide programs on conservation and efficient use of electricity in commercial and industrial applications and on TVA's power program to consumer groups, professional groups, civic clubs, power distributor personnel and others . . . . Advises power distributors regarding methods and procedures for solving local commercial and industrial power problems. (Ex. 2 to Affidavit of Walter J. Szelich; Ex. 1 to Affidavit of R. J. Thompson).

As supervisor of the commercial and industrial section of a TVA District Office, Szelich had responsibilities which included "developing, conducting and implementing with power distributors and ultimate consumers various Valley-wide energy demonstration and research programs on conservation and efficient use of electricity in commercial and industrial applications . . . ." (Ex. 3 to Affidavit of Walter J. Szelich, Jr.) It is thus clear that the statements of TVA's position by Szelich and Thompson were within the scope of their duties. Because the federal employees involved in this case were acting within the scope of their official duties, we hold that each of the individual defendants is absolutely immune from civil liability.

 Tennessee law does not impose vicarious liability when the agent is not subject to individual liability. *Walters, supra;*

*Stewart v. Craig,* 208 Tenn. 212, 344 S.W.2d 761 (1961). As a matter of federal law, TVA may assert the defense of absolute immunity just as its employees may. *Becker v. Philco Corp.,* 372 F.2d 771 (4th Cir. 1967), *cert. denied,* 389 U.S. 979, 88 S.Ct. 408, 19 L.Ed.2d 473 (1967); *Adams v. Home Owners' Loan Corp.,* 107 F.2d 139 (8th Cir. 1939). Accordingly, we also hold that TVA cannot be held liable for damages in this case.

█ Plaintiffs also seek declaratory and injunctive relief to prevent TVA from expressing its opinion on the merits of the Phase Liner.

It must be recognized that TVA enjoys the full panoply of First Amendment protections for its direct comments on public issues. *See Consolidated Edison Co. v. Public Service Commission,* 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980). Also, we note the Supreme Court's recent statement that "energy conservation . . . is an imperative national goal." *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 571, 100 S.Ct. 2343, 2354, 65 L.Ed.2d 341 (1980). The affidavits and depositions submitted to the Court show the public interest and debate which the Phase Liner has engendered. As noted earlier, Queen and Szelich have made television appearances to discuss the device and the news media has made inquiries. Also numerous advertisements promoting the Phase Liner as an energy conservation device, as well as other news stories, have appeared in newspapers and magazines in the TVA service area. TVA has been asked many times about the capabilities of the device. (Exs. 2 and 3 to Affidavit of R. J. Thompson). Plaintiffs have submitted numerous depositions as well as Queen's affidavit to support their claim that the Phase Liner will reduce the electric bills of any consumer. (Affidavit of John A. Queen; Howard Deposition; Burgbacher Deposition; Bright Deposition; Powell Deposition; O'Dowd Deposition; Hill Deposition). TVA, on the other hand, claims that their tests indicate that the device will not help residential or small commercial users of electricity. (Affidavit of Walter J. Szelich, Jr.) By seeking injunctive relief, plaintiffs now seek to exclude TVA from the debate over the merits of the Phase Liner.

The free discussion of matters of public interest is not properly enjoined. *Robinson v. American Broadcasting Cos.,* 441 F.2d 1396 (6th Cir. 1971); *American Broadcasting Cos. v. Smith Cabinet Mfg. Co.,* 160 Ind.App. 367, 312 N.E.2d 85 (1974); *Krebiozen Research Foundation v. Beacon Press, Inc.,* 344 Mass. 86, 134 N.E.2d 1 (1956); *cert. denied,* 352 U.S. 848, 77 S.Ct. 65, 1 L.Ed.2d 58 (1956). In *Robinson v. American Broadcasting Cos., supra,* the Court denied an injunction which would have restrained the broadcasting of anti-smoke commercials. With regard to the plaintiff's defamation claim, the Court stated that

the right of protection against defamation must give way to the public's right to open discussion and exchange of ideas. 441 F.2d at 1401.

We believe the same considerations apply to this case. Therefore, in view of the public interest in energy conservation and energy saving devices, we hold that plaintiffs' claim for declaratory and injunctive relief must be denied.

Plaintiffs argue that since defendants are immune from civil liability they are entitled to an injunction. They argue that a determination as to the product's ability to reduce electric bills must now be made. Justice Holmes answered these arguments in his famous dissent in *Abrams v. United States,* 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173 (1919), when he stated that

the ultimate good desired is better reached by free trade in ideas—that the best test of truth is the power of the thought to get itself accepted in the competition of the market. . . . 250 U.S. at 630, 40 S.Ct. at 22.

The debate over the abilities of plaintiffs' product is a technical one. Likewise, the debate over which energy conservation measures are the most effective is not capable of easy resolution. These issues are to be settled in the market place and not by this Court.

At oral argument counsel for TVA stated that TVA only gave its position on the Phase Liner in response to inquiries from its customers or the news media. In the opinion of the Court TVA had not only a right but also a duty to respond to these inquiries. The TVA Act directs the TVA Board

> to make studies, experiments, and determinations to promote the wider and better use of electric power for agricultural and domestic use, or for small or local industries, and it may cooperate with State governments, or their subdivisions or agencies, with educational or research institutions, and with cooperatives or other organizations, in the application of electric power to the fuller and better balanced development of the resources of the region.... 16 U.S.C. § 831i.

TVA complied with this directive by stating its position on the merits of plaintiffs' product. Furthermore, we are not convinced that TVA's statements constitute defamation. Defendants' statements concerning plaintiffs' product do not tend "to blacken the reputation" of plaintiff or "to expose him to public hatred, contempt or ridicule;" nor do the statements "reflect in a defamatory manner upon the conduct, management, or financial condition of the corporation." *Electric Furnace Corp. v. Deering Milliken Research Corp.*, 325 F.2d 761, 764–65 (6th Cir. 1963). TVA's statements are simply its opinion on what energy conservation measures consumers should pursue. This should not be enjoined.

Plaintiffs have moved to strike the affidavits of Szelich, Thompson, Crowell and Glinski. The contentions made by plaintiffs have been considered by the Court while ruling on defendants' motion for summary judgment. The Court has relied upon Exhibits 2 and 3 to the Affidavit of R. J. Thompson and finds plaintiffs' objections to these to be without merit. The Court has not relied upon the portions of the other affidavits which plaintiffs challenge. Accordingly, the affidavits will not be stricken.

For the reasons stated, it is ORDERED that plaintiffs' motion to strike affidavits be, and the same hereby is, denied. It is further ORDERED that defendants' motion for summary judgment be, and the same hereby is, granted. It is further ORDERED that this case be, and the same hereby is, dismissed.

Order Accordingly.