## LEONARD J. JACOBS *vs*. PINE MANOR COLLEGE.

Norfolk. January 9, 1987. — March 11, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Practice, Civil*, Instructions to jury. *Water. Drain. Real Property*, Water, Drain, Flowage of water.

At the trial of a civil case, the judge's refusal to give an instruction in terms requested by the plaintiff was not error where the judge's charge to the jury adequately dealt with the subject matter of the requested instruction. [414-415]

In an action brought in 1976 seeking to recover for damage allegedly caused to the plaintiff's land by the defendant's collecting and discharging large quantities of surface water through an artificially constructed channel onto the plaintiff's property, the judge erred in instructing the jury that "[i]n order for there to be liability the flow of water through the artificial channel has to result in water of a *substantially* greater quantity on the [plaintiff's] property," where, since the action arose prior to this court's decision in *Tucker* v. *Badoian*, 376 Mass. 907 (1978), the traditional "common enemy" doctrine applied, and consequently, the construction of definite drainage channels, not the amount of water discharged, determined liability. [415-417]

Where, in an action brought prior to this court's decision in *Tucker* v. *Badoian*, 376 Mass. 907 (1978), seeking to recover for damage allegedly caused to the plaintiff's land by the defendant's collecting and discharging large quantities of surface water through an artificially constructed channel onto the plaintiff's property, the judge erred by making a finding of "substantial" increases in water flowing onto the plaintiff's property a necessary precondition to reaching the question of damages, and where the jury had already answered in the affirmative the question whether the defendant caused surface water to be discharged onto the plaintiff's property by means of a definite, artificial drainage channel or channels, this court remanded this case for a new trial limited to the question whether the plaintiff suffered identifiable and more than de minimis damages and for an assessment of an appropriate award of damages, if any. [418]

CIVIL ACTION commenced in the Superior Court on June 28, 1976.

The case was tried before *James P. Lynch, Jr.,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Morris M. Goldings* (*Richard S. Jacobs* with him) for the plaintiff.

*James J. D'Ambrose* for the defendant.

LIACOS, J. The plaintiff, Leonard J. Jacobs, filed a complaint in the Superior Court in Norfolk County in 1976 alleging that the defendant, Pine Manor College, was collecting and discharging large quantities of surface water onto his property through an artificial channel. The channel was created by the use of two large storm drainage pipes which the defendant had installed on its property. Alleging that the large amount of water discharged from the defendant's pipes had damaged his property, the plaintiff sought money damages and injunctive relief. The case proceeded to a jury trial on November 16, 1983. At the conclusion of the evidence and after argument by counsel, the trial judge submitted three special questions to the jury. Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). The special questions asked:

> "1. Does Pine Manor College cause surface water to be discharged on the Jacobs property by means of a definite, artificial drainage channel or channels?
>
> "2. Is the flow of such surface water onto the Jacobs property materially increased by Pine Manor College's acts?[1]
>
> "3. To what extent in dollars is the fair market value of the Jacobs property diminished by such surface water so discharged from Pine Manor College?"

The jury answered "yes" to question no. 1, and "no" to question no. 2. The jury did not reach the issue of damages in question no. 3. They had been instructed not to reach that question if question no. 2 was answered in the negative. Judgment was entered for the defendant.

---

[1] There was no objection at trial to the form of this question, including the use of the phrase "materially increased."

The plaintiff appealed, claiming that the judge erred in his instruction to the jury regarding special question no. 2, and in his failure to instruct on that question as requested by the plaintiff.[2] We reverse.

The evidence placed before the jury is as follows. The plaintiff owns a parcel of residential property[3] in the Chestnut Hill section of Brookline. The plaintiff's property is at the base of the "Pine Manor Hill," adjacent to, but at a lower elevation than, the defendant's seventy-five acre campus. When the defendant moved to the site in 1965, it constructed several buildings and associated roadways, sidewalks, and parking areas. In connection with this construction, the defendant in 1969 installed a storm drainage pipe[4] near an existing pipe which protruded from an embankment near the plaintiff's property. Both pipes are approximately five feet off the ground, open-ended, and facing the plaintiff's backyard. They discharge water 100 feet and sixty feet north of the plaintiff's property line.[5] Drainage in the area is in the direction of the plaintiff's property. At no time has the plaintiff given the defendant an easement, or permission, to flow water across his property.

---

[2] In an unpublished memorandum and order, the Appeals Court, on April 2, 1986, ordered that the judgments for the defendant be affirmed pursuant to Appeals Court Rule 1:28. *Jacobs* v. *Pine Manor College*, 21 Mass. App. Ct. 1115 (1986). We allowed the plaintiff's application for further appellate review.

[3] The plaintiff's property covers 60,130 square feet and includes a four-teen-room house. The backyard, which he claims has sustained damages as a result of the defendant's actions, is approximately 40,000 square feet.

[4] This drainage pipe, twelve inches in diameter, connects to a catch basin designed to "take the flow from the roof and the construction of the refectory," one of the new additions to the defendant's campus. A catch basin is a cylindrically-shaped structure placed in the ground and covered with a grate that allows water to collect and to flow into an underground pipe. In this case, the water flows into a corrugated steel culvert which eventually discharges water at the base of the embankment near the plaintiff's property.

[5] A stream of water begins at the eight-inch pipe, is swelled by the effluent from the twelve-inch pipe, runs along a chain link fence which marks the boundary between the parties' properties, and finally turns and enters the plaintiff's property.

The plaintiff claims that the large quantities of surface water discharged onto his property when there is any measurable amount of precipitation have caused a "continuing, on-going deterioration" of his 40,000 square foot backyard.[6] Since he first noticed the water problems in September, 1973, the plaintiff's property has been flooded during certain times of the year. A stream has been furrowed onto it, and pools of standing water collect in large portions of the backyard for much of the year. Even when there is no standing water, according to the plaintiff, the ground is so sodden that the use of the property is severely limited. The plaintiff testified that his family has not been able to use the backyard for any purpose since June, 1974.[7] An attempt by the parties to agree on an engineering solution was unsuccessful.

1. On appeal, the plaintiff maintains first that the trial judge erred in refusing to give the following requested instruction: "It does not matter whether some water would reach the Plaintiff's property even if the artificial channel or channels were not there, so long as the artificial channel or channels brought down more water than otherwise would come." *Bates* v. *Westborough*, 151 Mass. 174, 181 (1890).

A trial judge has wide latitude in framing the language to be used in jury instructions. *Commonwealth* v. *Kelley*, 359 Mass. 77, 92 (1971). "A judge is not required 'to instruct the jury in the terms of a requested instruction — even if it is correct as matter of law and applicable to the pleadings and the evidence — if the subject matter thereof is dealt with adequately in the charge.' " *Campbell* v. *Shea*, 332 Mass. 422,

---

[6] The property in the rear of the plaintiff's house includes a 20,000 square foot wooded area and a landscaped lawn of approximately the same size. The plaintiff maintains that both areas have been damaged by the defendant's use of the drainage pipes.

[7] A real estate appraiser engaged by the plaintiff testified that the fair market value of the plaintiff's property would be $430,000 if there were no water problems in the backyard. The condition of the backyard, in the plaintiff's appraiser's opinion, reduced the value of the property to $330,000. The real estate appraiser called by the defendant estimated that the plaintiff's property had a fair market value of $450,000 regardless whether the use of the backyard was limited in the manner described by the plaintiff's witnesses.

425 (1955), quoting *Squires* v. *Fraska,* 301 Mass. 474, 476 (1938). See also *Commonwealth* v. *Sherry,* 386 Mass. 682, 696 (1982). Accordingly, we turn to the plaintiff's second claim, that the judge's instruction explaining question no. 2 was "confusing, contradictory, and erroneous."

2. Of the judge's five pages of instructions on question no. 2, the plaintiff objected at trial "only to so much of the charge that included in the definition of material amounts [of surface water discharged onto the plaintiff's property], the words 'substantially' and 'substantial.'" In his brief, the plaintiff focuses his objection on the judge's instruction: "In order for there to be liability, the flow of water through the artificial channel has to result in water of a *substantially* greater quantity on the [plaintiff's] property" (emphasis supplied). We have read the judge's instructions and find them to be clear, carefully stated, and not at all contradictory. Consequently, we consider only the claim that the instructions were "erroneous."

The plaintiff asserts that the instructions on question no. 2 were inconsistent with the relevant decisions of this court regarding the artificial channelling of surface water. For situations arising prior to our decision in *Tucker* v. *Badoian,* 376 Mass. 907 (1978), the traditional "common enemy" doctrine applies.[8] Under that doctrine, liability depends on whether "the defendant caused surface water, which might otherwise have been absorbed or have flowed elsewhere, to be artificially channelled and discharged on the plaintiff's land in a place and quantity sufficient to entitle the plaintiff to relief. *Kapayanis* v. *Fishbein,* 344 Mass. 86, 87 (1962). *Kuklinska* v. *Maplewood Homes, Inc.,* [336 Mass. 489, 493 (1957)]." *Tucker* v. *Badoian, supra* at 914. It is the construction of definite drainage channels, not the amount of water discharged, which determines liability under the "common enemy" doctrine.

---

[8] Noting that this case was initiated in 1976, the trial judge ruled, and the parties agreed, that the rule we applied in 1978 in *Tucker* v. *Badoian, supra,* governs the resolution of this matter. The "reasonable use" standard, espoused by six members of this court in a concurring opinion in that case, was "reserved for prospective application." *Tucker* v. *Badoian, supra* at 919 (Kaplan, J., concurring).

Whether damages could be recovered depended, however, on whether the injury suffered was more than inconsequential.

In *Kapayanis* v. *Fishbein, supra* at 87, we held that the plaintiffs were entitled to relief despite the master's finding that "the plaintiffs have sustained nothing more than nominal damage." We considered the finding of the master to be "ambiguous." "It . . . may mean only that past excessive discharges of water have caused no lasting or substantial injury to the plaintiffs. The finding that in 'heavy rains water still continues to flow . . . to the plaintiffs' land' indicates that the master thought that the flow was in more than minute quantities 'so small as to be inconsequential.' Cf. *Fortier* v. *H.P. Hood & Sons,* 307 Mass. 292, 294 [1940]." *Kapayanis* v. *Fishbein, supra* at 87-88.

In *Bates* v. *Westborough, supra* at 181, this court granted a plaintiff relief for the overflow of his land with water from the defendant's drains and stated that "it would not matter that some water would reach the obstacle if the defendant's drain were not there, provided the drain brings down more than otherwise would come, and causes the flooding of the plaintiff's land by this excess."

In our view, the inquiry in the case at bar, and in any case where the conduct occurred prior to 1978, the date of *Tucker* v. *Badoian, supra,*[9] should be as follows: (1) Did the defendant

---

[9] Under the "reasonable use" standard announced prospectively by six Justices in the concurring opinion written by Justice Kaplan in *Tucker* v. *Badoian,* the outcome does not turn on the threshold determination whether an artificial channel was constructed. Rather, "each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable." *Tucker* v. *Badoian, supra* at 917-918 n.2, quoting *Armstrong* v. *Francis Corp.,* 20 N.J. 320, 327 (1956).

On the record before us, we cannot say how the "reasonable use" standard would apply in the instant case, as "[t]he issue of reasonableness or unreasonableness becomes a question of fact to be determined in each case upon a consideration of all the relevant circumstances, including such factors as the amount of harm caused . . . ." *Tucker* v. *Badoian, supra* at 918 n.2., quoting *Armstrong* v. *Francis Corp., supra* at 330. In this case, as noted above, the jury were instructed not to reach the issue of damages if they determined that the defendant's acts had not caused a material increase in the amount of surface water flowing onto the plaintiff's property.

cause surface water to be discharged on the plaintiff's property by means of a definite, artificial drainage channel or channels (question no. 1 as presented to the jury in this case); and (2) was the plaintiff's property damaged as a result of any change[s] in the flow of such surface water onto his property. In this case, the judge erred by making a finding of "substantial" increases in water flowing onto the plaintiff's property a necessary precondition to reaching the question of damages.[10] The logical result of the judge's formulation would be that a plaintiff who had suffered enormous losses as a result of an artificial channel installed by a defendant, which focused the same amount of water differently, or dammed and then released it onto the plaintiff's property all at once, would be entitled to no relief simply because the amount of water had not been increased substantially by the defendant's acts.

---

[10] In support of its position that the judge's instructions regarding question no. 2 were not erroneous, the defendant cites two decisions of the Appeals Court, *Neponset Reservoir Corp.* v. *Bashaw,* 8 Mass. App. Ct. 35 (1979), and *McNamara* v. *Westview Bldg. Corp.,* 4 Mass. App. Ct. 670 (1976). In *Neponset Reservoir Corp.* v. *Bashaw, supra* at 41, the Appeals Court affirmed a judgment of the Land Court where the denial of relief "was predicated on a finding that much, if not all, the water coming through the drainage pipe would reach [the plaintiff's] land in any event by way of the natural flow of surface water off the [defendant's] land." Where "the drainage caused by the presence of the pipe was not substantially more than what would flow . . . in the process of normal runoff[,] . . . there may have been an artificial channel but it did not materially increase the flow of water on to [the plaintiff's] land." *Id.* at 42. The court stated that "[t]his aspect of the case is governed . . . by our statement in *McNamara* v. *Westview Bldg. Corp., [supra* at 672]. 'As the flow of surface water onto the plaintiff's land was not materially increased by the defendant's acts, and as it appears that the natural entrance of most, if not all, of the surface drainage from the defendant's land onto the plaintiff's land remained the same as it had been prior to the installation of the drainage system, and that no damage to the plaintiff's land resulted from the change from natural drainage to an artificial drainage system, the plaintiff has no basis for complaint.'" *Neponset Reservoir Corp.* v. *Bashaw, supra* at 42.

In our view, the lack of any damage to the plaintiff's land was the key factor precluding relief in *McNamara* and distinguishes that case from the case at bar. We also note that the plaintiff in *McNamara* sought an injunction to prevent the defendant from "draining or discharging *any water whatsoever* on the plaintiff's real estate" (emphasis added). *McNamara* v. *Westview Bldg. Corp., supra* at 671.

The better formulation would follow that adopted by this court in *Triangle Center, Inc.* v. *Department of Pub. Works,* 386 Mass. 858 (1982). In that case, where we applied the doctrine of private nuisance to assess the reasonableness of the State's draining surface water from a State highway onto a plaintiff's land, we stated that "if the additional drainage onto [the plaintiff's] land attributable to the construction and maintenance of the road causes identifiable and more than de minimis damage, an injunction against its continuation would be appropriate . . . . If, on the other hand, that drainage causes only de minimis damage to [the plaintiff's] land, an injunction would be inappropriate." *Id.* at 864. The same standard ought to be applied to the question whether a plaintiff is entitled to an award of damages.

The judge's charge, viewed in its totality, placed a greater burden on the plaintiff. Thus, there was error. If the flow of surface water onto the plaintiff's property attributable to the discharge through the artificial channel or channels causes identifiable and more than de minimis damage, the plaintiff is entitled to some measure of relief. Because the jury in this case answered question no. 1 in the affirmative after receiving correct instructions, there is no need to retry that question. Accordingly, the case is remanded for a new trial on the question whether the plaintiff suffered identifiable and more than de minimis damages and for an assessment of an appropriate award of damages, if any.

*So ordered.*