RICHARD S. THAYER & another[1] vs. PITTSBURGH-CORNING
CORPORATION & others.[2]

No. 96-P-68.

Middlesex. December 11, 1997. - September 9, 1998.

Present: WARNER, C.J., PERRETTA, & BECK, JJ.

*Evidence,* Relevancy and materiality, Settlement offer. *Negligence,* Duty to
warn. *Warranty. Uniform Commercial Code,* Privity of contract. *Joint Tort-
feasors. Husband and Wife,* Consortium.

In an action against an asbestos manufacturer, the trial judge's exclusion of
"state of the art" evidence, relevant to the manufacturer's knowledge of
the risks associated with exposure to asbestos at the time the product was
marketed, required the manufacturer to be granted a new trial. [437]

Where a worker was exposed to asbestos between 1948 and 1952, but was not
diagnosed with asbestos-related injury until 1992, the defense of lack of
privity was not available to the defendant manufacturer in the worker's ac-
tion for breach of warranty, inasmuch as St. 1973, c. 750, §§ 1, 2,
eliminated the requirement of privity for any injuries occurring after the
date of that amendment. [438-440]

At the retrial of a breach of warranty action against an asbestos manufacturer,
if the plaintiffs should prevail, the parties should attempt to reach a mutu-
ally agreeable apportionment of the plaintiffs' pretrial settlement with the
other defendants, or the judge should determine the proper allocation.
[440-441]

At the trial of a breach of warranty action, the judge's instruction on loss of
consortium was adequate [441-442]; the judge correctly gave limiting
instructions to the jury on the existence of a pretrial settlement with other
defendants [442-443]; and the judge correctly refused to instruct on the ef-
fect of inflation on future medical costs where there was no evidence to
warrant such instruction [443].

CIVIL ACTION commenced in the Superior Court Department on
May 18, 1993.

The case was tried before *Hiller B. Zobel,* J., and motions for
a new trial were heard by him.

[1]His wife, Patricia Thayer, brought a loss of consortium claim.
[2]Owens-Illinois, Inc., and Owens-Illinois Glass Company.

*Patricia M. Flannery* for the plaintiffs.

*Peter J. Rubin* for Owens-Illinois, Inc.

WARNER, C.J. Richard Thayer (Thayer) was exposed to asbestos between 1948 and 1952, while working as a machinist helper on the U.S.S. Des Moines and the U.S.S. Salem, two ships under construction at the Fore River Shipyard, and while serving on the U.S.S. Salem during its overhaul and subsequent naval exercises. In 1992, Thayer was diagnosed with malignant mesothelioma.[3] In 1993, he and his wife filed suit against several asbestos manufacturers. They subsequently reached a settlement with all defendants except Owens-Illinois, Inc., and Owens-Illinois Glass Company (Owens).[4]

The claims against Owens were tried to a Superior Court jury on a theory of breach of warranty. The jury awarded $242,000 to Thayer and $3,000 to Patricia Thayer on her loss of consortium claim. The plaintiffs moved for a new trial on the issue of damages, and Owens moved for a new trial on liability. Both motions were denied, and the parties cross-appealed.

On appeal, Owens contends that the plaintiffs' claims are barred due to the lack of privity between Thayer and Owens, and argues that the judge, therefore, erred in denying its motion for partial summary judgment. Owens also maintains that the judge improperly excluded state of the art evidence which was relevant to show its knowledge of the risks associated with asbestos, and two of its proposed trial exhibits. Finally, it contends that the judge improperly apportioned the pretrial settlement the plaintiffs received from other defendants among the plaintiffs' personal injury and wrongful death claims before applying the settlement to the jury award in the present action pursuant to G. L. c. 231B, § 4. The plaintiffs challenge the judge's instructions on loss of consortium. They also contend that the judge erred in informing the jury of the existence of a pretrial settlement with other defendants in the case and in failing to instruct the jury on the effect of inflation on Thayer's future damages. Finally, they argue that the judge's denial of their motion for a new trial on the issue of damages was error. We reverse.

We first consider the issues raised by Owens.

---

[3]Mesothelioma is a malignant tumor of the pleura, or lining of the lung, caused by exposure to asbestos dust and fibers.

[4]Prior to trial, the Thayers settled with AC & S, Inc., Fiberboard Corporation, GAF Corporation, and Garlock, Inc., for an aggregate sum of $431,000.

*Exclusion of state of the art evidence.* Owens claims that in this so-called failure to warn case, state of the art evidence was relevant to its knowledge of the risks associated with exposure to asbestos. It argues, therefore, that the judge erred in denying its request for the introduction of such evidence.[5] Our resolution of this issue is controlled in all material respects by the Supreme Judicial Court's recent decision in *Vassallo* v. *Baxter Healthcare Corp.*, 428 Mass. 1, 19-23 (1998), which mandates that we vacate the judgment against Owens.[6]

In *Vassallo*, the court reconsidered "the duty to warn under the implied warranty of merchantability" and changed Massachusetts law "to state that a defendant will not be held liable under an implied warranty of merchantability for failure to warn or provide instructions about risks that were not reasonably foreseeable at the time of sale or could not have been discovered by way of reasonable testing prior to marketing the product." *Id.* at 20, 23. Under the authority of *Vassallo*, state of the art evidence was undoubtedly relevant in determining whether Owens breached its implied warranty of merchantability based upon a failure to warn.[7] Accordingly, Owens is entitled to a new trial.[8]

*Additional evidentiary issues.* Owens's additional claims of error with respect to evidentiary rulings do not require extended discussion. The excluded evidence was either cumulative, and

[5]With respect to the state of the art issue, Owens cites to part of a bench conference dealing with the number of witnesses and the estimated length of trial, at which Owens's counsel mentioned that several individuals on the expert witness list were "in line to support state of the art" and "were listed in the hope and prayer that the court might reconsider its position on that issue." Counsel further indicated that "the court [had] not [yet] ruled [on the issue] in this case." Neither the defendants' motion, if any, nor the judge's decision appear in the record. The plaintiffs do not argue that Owens's right to raise the issue has been waived, however, and we therefore consider it sufficiently preserved.

[6]The Supreme Judicial Court expressly stated that the standard articulated in *Vassallo* is applicable "to all claims on which a final judgment has not been entered, or as to which an appeal is pending or the appeal period has not expired, and to all claims on which an action is commenced after the release of this opinion." *Id.* at 23.

[7]Under the law as it existed at the time of trial, the judge did not err in excluding the evidence. See *Hayes* v. *Ariens Co.*, 391 Mass. 407, 413 (1984) ("for purposes of our warranty law, the . . . state of the art is irrelevant").

[8]We consider the additional issues raised on appeal as they may arise in any retrial.

within the judge's discretion to exclude, or irrelevant[9] and, therefore, caused no prejudice to Owens. See *Cohen* v. *Liberty Mut. Ins. Co.*, 41 Mass. App. Ct. 748, 752-753 (1996).

*The requirement of privity.* Owens maintains that the judge erred in denying its motion for partial summary judgment, thereby allowing the plaintiffs to proceed on the breach of warranty count despite the lack of privity between Thayer and Owens. At the time of Thayer's exposure (1948-1952), the Uniform Sales Act, G. L. c. 106, § 17(2), made privity a prerequisite to the maintenance of any breach of warranty claim against a seller. In 1957, Massachusetts enacted the Uniform Commercial Code. "As it appeared originally in St. 1957, c. 765, § 1, as part of the Commonwealth's adoption of the . . . Code, [G. L. c. 106,] § 2-318" eliminated the privity requirement which had been necessary under the Uniform Sales Act, but only for members of the purchaser's family, household, and guests. *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 34 (1977). In 1971, § 2-318 was completely rewritten to allow breach of warranty actions in the absence of privity for *sales* occurring on or after November 16, 1971, "if the plaintiff was a person whom the manufacturer . . . might reasonably have expected to use, consume or be affected by the goods." St. 1971, c. 670, § 1. *Hoffman, supra* at 34-35. In 1973, § 2-318 was again amended, eliminating the requirement of privity for any *injuries* occurring after the effective date of the amendment. St. 1973, c. 750, §§ 1, 2. *Hoffman, supra* at 35.

Owens argues that because Thayer's exposure to its product occurred prior to the adoption of the Uniform Commercial Code, the Uniform Sales Act is applicable to this case.[10] Accordingly,

---

[9]In particular, the 1955 article reporting on a study conducted in 1943 was not relevant.

[10]In support of its position, Owens relies on the following "savings provision" included in the Uniform Commercial Code:

"Transactions validly entered into before the effective date [specified in § 21] and the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by this act as though such repeal or amendment had not occurred."

St. 1957, c. 765, § 19. Owens also cites *D'Aloisio* v. *Mortons Inc.*, 342 Mass. 231, 236 (1961), and *Frick Co.* v. *New England Insulation Co.*, 347 Mass.

it contends that the plaintiffs' claims are barred and that the aforementioned amendments to § 2-318 are irrelevant. The plaintiffs maintain that because Thayer's injury did not occur until 1993, many years after the 1973 amendment, the judge's denial of Owens's motion was proper. There was no error.

Subsequent to the 1973 amendment to G. L. c. 106, § 2-318, our appellate courts have looked to the *date of injury* rather than to the date of sale or transaction in determining whether the lack of privity defense is available against a plaintiff and have permitted plaintiffs to proceed where their injuries occurred after its effective date. See, e.g., *Hoffman* v. *Howmedica, Inc.*, *supra* at 34-35; *Cameo Curtains, Inc.* v. *Philip Carey Corp.*, 11 Mass. App. Ct. 423, 427 (1981). See also *Swartz* v. *General Motors Corp.*, 375 Mass. 628, 631 (1978) (privity a valid defense where sale and injury both occurred prior to 1973); *Mansfield* v. *GAF Corp.*, 5 Mass. App. Ct. 551, 556 (1977) (same).

Federal courts applying Massachusetts law have placed similar emphasis on the date of injury rather than on the transaction date. See, e.g., *Payton* v. *Abbott Labs*, 551 F. Supp. 245, 246 (D. Mass. 1982); *McCormack* v. *Abbott Labs*, 617 F. Supp. 1521, 1524 (D. Mass. 1985). In *In re Massachusetts Asbestos Cases*, 639 F. Supp. 1, 3 (D. Mass. 1985), the court expressly held that "the defense of lack of privity is not available against any plaintiff whose first manifestation of physical symptoms attributable to an asbestos-related disease occurred after December 16, 1973." See *Eagle-Pitcher Indus., Inc.*, v. *Liberty Mut. Ins. Co.*, 682 F.2d 12, 25 (1st Cir.), cert. denied, 460 U.S. 1028 (1982) (holding that for purposes of determining coverage under insurance policy, "disease 'results' . . . when it becomes reasonably capable of medical diagnosis").

In the present case, although Thayer's exposure to asbestos occurred between 1948 and 1952, we hold that his injury did not occur until 1992, when he became ill and was diagnosed

461, 466 (1964), in support of its claim that the Uniform Sales Act is applicable in these circumstances. These cases are inapposite, however, because application of the Uniform Sales Act does not appear to have been a contested issue in either of them, and, more important, because both were decided long before the 1973 amendment to § 2-318, whose purpose was "to eliminate lack of privity as a defense in . . . breach of warranty action[s]." *Cameo Curtains, Inc.* v. *Philip Carey Corp.*, 11 Mass. App. Ct. 423, 427 (1981).

with malignant mesothelioma. Cf. *McCormack* v. *Abbott Labs*, *supra*. Because the injury occurred well after the 1973 amendment to § 2-318 eliminating the privity requirement with respect to such injuries, Owens's motion for partial summary judgment was properly denied. The fact that Thayer was exposed to asbestos prior to the Commonwealth's adoption of the Uniform Commercial Code does not affect this result.

*Apportionment of pretrial settlements.* Owens's final claim of error concerns the relationship between the plaintiffs' pretrial settlement with the other defendants and the subsequent jury award. With interest, the jury award against Owens totaled $306,250. The award encompassed the personal injury and loss of consortium claims considered by the jury. The plaintiffs previously received $431,000 from the other defendants in settlement of all their claims, including any possible future claims for wrongful death.

Pursuant to G. L. c. 231B, § 4,[11] Owens is entitled to subtract the amount paid in pretrial settlements by the other defendants from the amount of any subsequent jury verdict against it. See *Laveck* v. *Pascoe Pizza, Inc.*, 29 Mass. App. Ct. 935, 938 (1990). However, it is not clear whether Owens should receive dollar-for-dollar credit against the jury verdict, with the remainder of the pretrial settlement being reserved as a set-off against an award in any future wrongful death action that may be brought against it, or whether the pretrial settlement figure must first be apportioned between the plaintiffs' claims for personal injury and loss of consortium and their potential wrongful death claims. Owens initially took the position that because the plaintiffs and the settling defendants did not make any effort to allocate the $431,000 settlement among the various claims, the

[11]The statute provides, in relevant part:

"When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury:

"(*a*) It shall not discharge any of the other tortfeasors from liability for the injury unless its terms so provide; but it shall reduce the claim against the others to the extent of any amount stipulated by the release . . . or in the amount of the consideration paid for it, whichever is the greater."

jury's award and the interest thereon, totaling $306,250, should be reduced to zero, leaving Owens with a "credit" of $124,750, which could be applied against any future wrongful death award. The plaintiffs objected to this proposal and urged the judge to hold an evidentiary hearing to apportion the settlement among the various claims. At a hearing on posttrial motions, the judge directed the parties to determine whether they could arrive at a mutually agreeable apportionment and indicated that, in the alternative, he would hold another hearing to determine the proper allocation. The parties subsequently stipulated to the following apportionment, which was proposed by Owens: seventy-five percent of the pretrial settlement would be deducted from the verdicts, interest, and costs in the present action and twenty-five percent would be allocated to offset the verdict, interest, and costs of any future wrongful death action.[12]

On appeal, Owens argues that because no apportionment was made by the settling parties at the time of settlement, none should subsequently have been undertaken. Although, in his memorandum and order granting Owens's motion to enforce, the judge noted Owens's objection to any allocation, it is by no means clear that the issue was properly preserved for appeal. Because this issue is likely to arise again if the plaintiffs prevail in any retrial, however, we consider it here.

Nothing in G. L. c. 231B, § 4, prohibits a judge from apportioning pretrial settlements among the plaintiffs' various claims in circumstances such as these. Where, as here, it is undisputed that the pretrial settlement included wrongful death claims and the jury award did not, we decline to impose such a restriction. Accordingly, we conclude that the judge acted properly. If the plaintiffs prevail in any retrial, the parties should again attempt to arrive at a mutually agreeable apportionment of the pretrial settlement, and if such an agreement cannot be reached, a hearing should be held at which the judge shall determine the proper allocation.

We next consider the issues raised by the plaintiffs.

*Jury instructions.* The plaintiffs' first claim of error concerns the judge's instruction on loss of consortium. They maintain that the judge's failure to give their proposed instruction No.

---

[12]After the agreement was reached, counsel for the plaintiffs notified Owens that the plaintiffs would not honor it. Owens then filed a motion to enforce, which was allowed.

28[13] was reversible error.[14] "A trial judge has wide latitude in framing the language to be used in jury instructions." *Jacobs* v. *Pine Manor College*, 399 Mass. 411, 414 (1987). Accordingly, the judge did not have to instruct the jury using the exact words proposed by the plaintiffs, as long as "the subject matter thereof [was] dealt with adequately in the charge." *Ibid.*, quoting from *Campbell* v. *Shea*, 332 Mass. 422, 425 (1955). We conclude that the instruction, which advised the jury to consider the different ways in which Thayer's illness adversely affected and impaired the marital relationship and resulted in the alteration and diminution in the kind of companionship and assistance that he provided to his wife and in his inability to be a full husband to her, was adequate. See *Olsen* v. *Bell Tel. Labs., Inc.*, 388 Mass. 171, 177 (1983) (defining loss of consortium as the loss of "companionship, affection, and sexual enjoyment of one's spouse").

The plaintiffs next claim that the judge erroneously instructed the jury on their pretrial settlement with other defendants. In light of the fact that the plaintiffs twice failed to object to the challenged instruction, the issue has not been preserved for appeal. *Weeks* v. *Harbor Natl. Bank*, 388 Mass. 141, 146-147 & n.3 (1983). In any event, the judge was correct to inform the jury of the existence of a pretrial settlement and to admonish them not to deduct the settlement amount from their award, if any. See *Morea* v. *Cosco, Inc.*, 422 Mass. 601, 602-603 & n.2 (1996) (rule that prohibits the jury from being informed of the "fact and the amount of [any pretrial] settlement" unless such information is relevant for some other purpose, is to be applied

---

[13]Instruction No. 28 included statements such as:

> "In considering the loss of consortium of a spouse, it is important to remember that . . . impairment [of the marital interest] may be definite, serious, and enduring, more so than the pain and suffering or mental or psychic distress . . . . Marriage is the foundation of the family. . . . The Commonwealth has a deep interest that its integrity is not impaired. You should consider the nature of the spousal relationship that was affected, such as how long the marriage existed . . . , whether it was a happy and close marriage, whether [it] changed from a source of joy and comfort . . . and the length of the period of loss . . . ."

[14]The plaintiffs also contend that the judge erred in refusing to give another proposed instruction regarding loss of consortium, No. 27, and in confusing the jury by overemphasizing the limited relevance of Patricia Thayer's ovarian cancer, which was diagnosed only days after Thayer received his diagnosis. Because neither of these claims was raised at trial, however, neither has been

prospectively only). See also *Yardley* v. *Rucker Bros. Trucking, Inc.*, 42 Or. App. 239, 243 (1979) ("in appropriate circumstances evidence of [a pretrial] settlement can be admitted . . . provided that the court then instructs the jury in unequivocal language to disregard the settlement and return a verdict for the full amount of the plaintiff's damages"). In accordance with *Morea, supra*, the jury at any retrial should not be informed of the existence or amount of the settlement.

The plaintiffs' third claim of error is based on the judge's failure to instruct the jury on the effect of inflation on Thayer's future medical expenses. Again, we discern no error. The only evidence of future medical expenses in this case was the deposition testimony of Dr. David Sugarbaker, Thayer's surgeon, that "after, you know, taking care of many, many patients with this disease, I would predict that [Thayer] would have need for medical care and that the need for that medical care, in the terminal stages where we know it's many times the most costly, would be in excess of several hundred thousand dollars." The total lack of testimony about inflation, coupled with the vagueness of Dr. Sugarbaker's estimate of future medical costs, justified the judge's refusal to instruct on inflation.

*Motion for a new trial.* The plaintiffs' final claim of error concerns the judge's denial of their motion for a new trial on the issue of damages. They argue that a new trial was necessary because the judge incorrectly instructed on loss of consortium, pretrial settlements, and future damages, and because the ultimate award was against the weight of the evidence. We have already concluded that the challenged instructions were adequate. With respect to the damages, our appellate courts "have said on numerous occasions that the allowance of a motion for a new trial based on an inadequate or excessive award of damages . . . rests in the sound discretion of the judge." *Blake* v. *Commissioner of Correction*, 403 Mass. 764, 770-771 (1989), quoting from *Loschi* v. *Massachusetts Port Authy.*, 361 Mass. 714, 715 (1972). This is especially true where, as here, the motion judge was also the trial judge. See *Commonwealth* v. *Gordon*, 13 Mass. App. Ct. 1085, 1085 (1982).

The plaintiffs argue that because Thayer's past and future medical expenses exceed the $242,000 awarded by the jury (prior to the addition of interest), the award is inadequate. We

preserved for our review. See Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974). See also *Mastaby* v. *Central Hosp., Inc.*, 34 Mass. App. Ct. 942 (1993).

disagree. The parties stipulated that Thayer's past medical expenses were $133,000. The only evidence of future medical costs was Dr. Sugarbaker's statement that terminal care expenses would be in excess of several hundred thousand dollars. In light of the vagueness of the evidence of future medical expenses, the jury could simply have discounted that testimony.

The plaintiffs also contend that the $3,000 loss of consortium award to Patricia Thayer was inadequate and against the weight of the evidence. Again, we disagree. It is possible that the jury ascribed some of the changes in the Thayers' marital relation to their ages and to Patricia Thayer's own cancer, rather than to Thayer's illness. Moreover, although Dr. Sugarbaker testified that Thayer's chance for long-term survival was less than 50%, at the time of trial he was in complete remission and was taking no medication except for an occasional over-the-counter pain reliever. Because the motion judge, who was also the trial judge, saw the witnesses and heard them testify, he was "in a far better position than we are to determine the reasonableness of the jury award." *doCanto* v. *Amtek, Inc.*, 367 Mass. 776, 788 (1975). Accordingly, we discern no abuse of discretion in the denial of the plaintiffs' motion for a new trial on damages.

So much of the judgment and the verdict as relate to liability are reversed and set aside. The order denying the motion for a new trial on damages is affirmed.

*So ordered.*